# State of Minnesota

## District Court

| County | Judicial District: | Second |
|---|---|---|
| Ramsey | Court File Number: | |
| | Case Type: | Civil/Miscellaeous/ Property Damage |

Jay Koester
_____
Plaintiff

vs

**Civil Summons**

Robin Ragusa
dba Travelers
_____
Defendant

---

This Summons is directed to (name of Defendant):

Ms. Robin Ragusa, dba Travelers, aka The Travelers Companies, Inc.; The Travelers Home and Marine Insurance Company; etc.

1.      **You are being sued**. The Plaintiff has started a lawsuit against you. The *Complaint* is attached to this *Summons*. Do not throw these papers away. They are official papers that start a lawsuit and affect your legal rights, even if nothing has been filed with the court and even if there is no court file number on this *Summons*.

2.      **You must BOTH reply, in writing, AND get a copy of your reply to the person/business who is suing you within 21 days to protect your rights.** Your reply is called an *Answer*.  Getting your reply to the Plaintiff is called service.You must serve a copy of your *Answer or Answer and Counterclaim* (Answer) within 21 days from the date you received the *Summons* and *Complaint*.

         ANSWER: You can find the *Answer* form and instructions on the MN Judicial Branch website at www.mncourts.gov/forms under the "Civil" category.  The instructions will explain in detail how to fill out the *Answer* form.

3.      **You must respond to each claim.**  The *Answer* is your written response to the Plaintiff's *Complaint*. In your *Answer* you must state whether you agree or disagree with each paragraph of the *Complaint*. If you think the Plaintiff should not be given everything they asked for in the *Complaint*, you must say that in your *Answer*.

4.    SERVICE: **You may lose your case if you do not send a written response to the Plaintiff.** If you do not serve a written *Answer* within 21 days, you may lose this case by default. You will not get to tell your side of the story. If you choose not to respond, the Plaintiff may be awarded everything they asked for in their *Complaint*. If you agree with the claims stated in the *Complaint*, you don't need to respond. A default judgment can than be entered against you for what the Plaintiff asked for in the *Complaint*.

To protect your rights, you must serve a copy of your *Answer* on the person who signed this *Summons* in person or by mail at this address: 6150 Boulder Ridge Drive, Rockford, Minnesota 55373.

5.    Carefully read the Instructions (CIV301) for the *Answer* for your next steps.

6.    **Legal Assistance.** You may wish to get legal help from an attorney. If you do not have an attorney and would like legal help:

- Visit www.mncourts.gov/selfhelp and click on the "Legal Advice Clinics" tab to get more information about legal clinics in each Minnesota county.

- Court Administration may have information about places where you can get legal assistance.

**NOTE: Even if you cannot get legal help, you must still serve a written *Answer* to protect your rights or you may lose the case.**

7.    **Alternative Dispute Resolution (ADR).** The parties may agree to or be ordered to participate in an ADR process under Rule 114 of the Minnesota Rules of Practice. You must still serve your written *Answer,* even if you expect to use ADR.

January 21, 2024
Date

Signature

Name: Jay Koester

Address: 6150 Boulder Ridge Drive

City, State, Zip: Rockford, Minnesota 55373

Telephone: 563-419-8335

E-mail: jayrkoester@yahoo.com

# State of Minnesota

# District Court

| | |
|---|---|
| County | Judicial District: **Second** |
| | Court File Number: |
| Ramsey | Case Type: Civil/Miscellaeous/ Property Damage |

Jay Koester
Plaintiff

vs

**Civil Summons**

Jonathan Ortiz
dba Travelers
Defendant

---

This Summons is directed to (name of Defendant):

Mr. Jonathan Ortiz, dba Travelers, aka The Travelers Companies, Inc.; The Travelers Home and Marine Insurance Company; etc.

1.     **You are being sued**. The Plaintiff has started a lawsuit against you. The *Complaint* is attached to this *Summons*. Do not throw these papers away. They are official papers that start a lawsuit and affect your legal rights, even if nothing has been filed with the court and even if there is no court file number on this *Summons*.

2.     **You must BOTH reply, in writing, AND get a copy of your reply to the person/business who is suing you within 21 days to protect your rights.** Your reply is called an *Answer*.  Getting your reply to the Plaintiff is called service.You must serve a copy of your *Answer or Answer and Counterclaim* (Answer) within 21 days from the date you received the *Summons* and *Complaint*.

     ANSWER: You can find the *Answer* form and instructions on the MN Judicial Branch website at www.mncourts.gov/forms under the "Civil" category.  The instructions will explain in detail how to fill out the *Answer* form.

3.     **You must respond to each claim.**  The *Answer* is your written response to the Plaintiff's *Complaint*. In your *Answer* you must state whether you agree or disagree with each paragraph of the *Complaint*. If you think the Plaintiff should not be given everything they asked for in the *Complaint*, you must say that in your *Answer*.

4.    SERVICE: **You may lose your case if you do not send a written response to the Plaintiff.** If you do not serve a written *Answer* within 21 days, you may lose this case by default. You will not get to tell your side of the story. If you choose not to respond, the Plaintiff may be awarded everything they asked for in their *Complaint*. If you agree with the claims stated in the *Complaint*, you don't need to respond. A default judgment can than be entered against you for what the Plaintiff asked for in the *Complaint*.

To protect your rights, you must serve a copy of your *Answer* on the person who signed this *Summons* in person or by mail at this address: 6150 Boulder Ridge Drive, Rockford, Minnesota 55373.

5.    Carefully read the Instructions (CIV301) for the *Answer* for your next steps.

6.    **Legal Assistance.** You may wish to get legal help from an attorney. If you do not have an attorney and would like legal help:

- Visit www.mncourts.gov/selfhelp and click on the "Legal Advice Clinics" tab to get more information about legal clinics in each Minnesota county.

- Court Administration may have information about places where you can get legal assistance.

**NOTE: Even if you cannot get legal help, you must still serve a written *Answer* to protect your rights or you may lose the case.**

7.    **Alternative Dispute Resolution (ADR).** The parties may agree to or be ordered to participate in an ADR process under Rule 114 of the Minnesota Rules of Practice. You must still serve your written *Answer,* even if you expect to use ADR.

January 21, 2024
Date

Signature

Name: Jay Koester

Address: 6150 Boulder Ridge Drive

City, State, Zip: Rockford, Minnesota 55373

Telephone: 563-419-8335

E-mail: jayrkoester@yahoo.com

# State of Minnesota

# District Court

| County | | Judicial District: | Second |
|---|---|---|---|
| | | Court File Number: | |
| Ramsey | | Case Type: | Civil/Miscellaneous/ Property Damage |

Jay Koester
_____
Plaintiff

vs

## Civil Complaint

Jonathan Ortiz and Robin Ragusa
dba Travelers
_____
Defendant

---

Plaintiff Jay Koester, as and for their Complaint against Defendants Jonathan Ortiz and Robin Ragusa, personally and individually, state and allege as follows:

## INTRODUCTION, PARTIES, & JURISDICTION

1.  Plaintiff Jay Koester ("Plaintiff", "Mr. Koester", etc.) has had insurance coverage from Travelers, aka The Travelers Companies, Inc.; The Travelers Home and Marine Insurance Company; etc. at the time of the incident and currently has an insurance policy coverage – all times for replacement coverage.

2.  Mr. Koester moved from West Des Moines, Iowa, to Maple Grove, Minnesota, in late September and early October 2019. Many items personal property did not arrive and others were damaged during the moving process – e.g., improper packing and protection; knocking over stakes of boxes, bins, etc.; having multiple moves on the same truck, etc.

3.  Mr. Koester had a rental townhouse in Maple Grove, Hennepin County, Minnesota, until moving into his current residence of 6150 Boulder Ridge Drive, Rockford, Wright County, Minnesota, in June 2020.

4.  The moving company attempted to make (hired) repairs on some of the damaged personal property of Mr. Koester. Clearly, an inexperienced and incompetent repair person was hired by the moving company. This so-called repair person made the personal property damages worse and was hostile. Mr. Ortiz and Ms. Ragusa failed and refuse to acknowledge this.

Filed in District Court
State of Minnesota
2/6/2024 11:19 AM

5.  After too many months of delay by the moving company, Mr. Koester ended up in Federal Court to even partially settle the claim for lost personal property. The remainder of the moving claim was then required to be submitted to Mr. Koester's insurance company of Travelers, aka The Travelers Companies, Inc.; The Travelers Home and Marine Insurance Company; etc.

6.  Defendant Jonathan Ortiz is supposedly a Claim Professional at Travelers, aka The Travelers Companies, Inc.; The Travelers Home and Marine Insurance Company; etc., during the time of Mr. Koester's property claim. Based on limited emails from Mr. Ortiz, there is a mailing address of: P.O. Box 650293, Dallas, Texas 75265-0293. There is also an address listed in the emails of: Lake Michigan Claim Center, 215 Shuman Boulevard, Naperville, Illinois 60563. And, then there is a principal executive office address of The Travelers Companies, Inc., 485 Lexington Avenue, New York, NY 10017. Mr. Ortiz's telephone number is out of the Naperville, Illinois area.

7.  Defendant Robin Ragusa is supposedly a Claim Professional at Travelers, aka The Travelers Companies, Inc.; The Travelers Home and Marine Insurance Company; etc., during the time of Mr. Koester's property claim. Based on limited emails from Ms. Ragusa there is a mailing address of: P.O. Box 650293, Dallas, Texas 75265-0293. There is also line in the emails for Lake Michigan Claim Center – likely at 215 Shuman Boulevard, Naperville, Illinois 60563. And, then there is a principal executive office address of The Travelers Companies, Inc., 485 Lexington Avenue, New York, NY 10017. Mr. Ragusa's telephone number is out of the Naperville, Illinois area.

8.  No matter how many times Mr. Koester informed Mr. Ortiz and/or Ms. Regusa – especially in writing, all hard copies of communications and/or partial payment checks were mailed to Mr. Koester at 176 Cambridge Drive, West Des Moines, Iowa, 50266. Said communications were delayed and/or never known of being sent.

9.  From the Secretary of State's website, The Travelers Companies, Inc. has a local address of: 385 Washington Street, Saint Paul, Minnesota 55102. File Number: 12-AA.

10. This Court has jurisdiction and venue over this action and over at least Defendants Ortiz and Regusa because 1) there are too many other possible jurisdictions; 2) the lost items and damages occurred in and/or between West Des Moines, Iowa to Maple Grove, Minnesota; 3) The Defendants work/worked for a company doing business in the State of Minnesota with an address of: 385 Washington Street, Saint Paul, Minnesota 55102; and 4) Mr. Koester while he has been/is residing and doing business in the City of Rockford, Wright County, and the State of Minnesota, during the personal property claim process.

Filed in District Court
State of Minnesota
2/6/2024 11:19 AM

## FACTUAL BACKGROUND

1.  Mr. Koester has been/is residing and doing business in the City of Rockford, Wright County, and the State of Minnesota.

2.  Mr. Ortiz was/is likely residing and doing business in and/or near the Naperville, Illinois, area.

3.  Ms. Ragusa was/is likely residing and doing business in and/or near the Naperville, Illinois, area.

4.  Travelers, aka The Travelers Companies, Inc.; The Travelers Home and Marine Insurance Company; etc., has a local address of: 385 Washington Street, Saint Paul, Minnesota 55102.

5.  Mr. Koester filed claim number IJE2304 on September 2, 2020.

6.  Ms. Christina Stoner was assigned to the claim on September 4, 2020. However, the claim was then assigned to Mr. Ortiz on September 14, 2020, without a reason supplied.

7.  Mr. Ortiz made his initial contact via email on October 15, 2020, in a response to my inquiry on the delay of contact on the claim. Mr. Ortiz then waited until November 11, 2020, to lie about attempting to contact me by telephone. Mr. Ortiz could only state in the email that 'a restoration company will be in contact with you to schedule an onsite inspection of the damaged items.' At least Mr. Ortiz was delaying and looking for reasons to deny.

8.  Mr. Koester attempted to contact Mr. Ortiz on November 11 and 16, 2020. On the latter date, there was an automated email response of 'I will be out of the office on Friday November 12th, 2020 and will return on Monday November 23rd, 2020.'

9.  On November 30, 2020, Mr. Kyle Dretsch, CPCU, CFE, CFI, FCLA, AINS – Lead Investigator for Travelers Investigative Services out of Saint Paul, Minnesota, sent Mr. Koester an email. At least Mr. Ortiz was delaying and looking for reasons to deny.

10. After many attempts to schedule the inspection and on December 7, 2020, Mr. Dretsch claimed a family situation and would be out of office for at least the week. Mr. Dretsch then stated to contact his colleague by the name of Shawn Neugebauer. At least Mr. Dretsch was delaying.

11. Mr. Neugebauer met with Mr. Koester on December 8, 2020, at Mr. Koester's residence in Rockford, Minnesota. Then, on December 10, 2020, Mr. Neugebauer required additional documentation.

12. On December 17, 2020, the restoration company submitted their report to Mr. Ortiz.

13. On December 27, 2020, Mr. Koester received an email from Mr. Ortiz stating "I am just following up regarding your recent claim and the service I provided. I would like to know if you have any outstanding questions or concerns. If so, please do not hesitate to contact me using the email address or phone number provided below." Mr. Koester responded on December 28, 2020, to receive an automated response of "I will be out of the office on Monday December 21st, 2020 and will return on Monday January 4th, 2020." Years are direct copy – proves that at least Mr. Ortiz does not review what he sends. Mr. Ortiz has NEVER responded – even to a January 17, 2021, email.

14. Mr. Ortiz's supervisor, Mr., Stephen Sherwood, and a Claims Manager, would not respond to voice mails until January 20, 2021. Mr. Sherwood falsely stated, claimed, etc. that Mr. Koester's supplied links were functional – apparently, Mr. Sherwood is unwilling and unable to type in this information.

15. Mr. Sherwood then required additional documents to be emailed to him and/or uploaded to the claim website – even after some of same documents had been uploaded. Specifically, Mr. Sherwood wanted to know the ages of the various pieces of personal property – even though Mr. Koester had and has replacement coverage. At least Mr. Sherwood was delaying and looking for reasons to deny.

16. On April 25, 2021, Mr. Koester attempted to contact Mr. Sherwood via email, only to get a response of "I am out of the office and will be returning on Monday April 26th."

17. On April 29, 2021, Mr. Sherwood responded with "I will review the attached and the items you uploaded to see what revisions are needed to the Travelers estimate. Once I have that completed I will send you any revisions. From there I will give you a call to discuss any remaining questions you may have." Mr. Koester has NEVER received a call, any emails, and/or a letter from Mr. Sherwood.

18. On December 31, 2021, Mr. Koester again emailed Mr. Sherwood. Again, Mr. Koester has NEVER received a call, any emails, and/or a letter from Mr. Sherwood.

19. On April 12, 2022, Mr. Koester opened a new claim (ITW5649) and was assigned to Mr. Timothy Gavin with a telephone number our of Saint Paul, Minnesota. Mr. Koester has NEVER received a call, any emails, and/or a letter from Mr. Gavin.

Filed in District Court
State of Minnesota
2/6/2024 11:19 AM

20. Between April 12 and 22, 2022, Ms. Ragusa moved the new claim to the previous claim number.

21. On April 22, 2022, Ms. Ragusa made her initial email contact. Ms. Regusa also required additional documentation from Mr. Koester.

22. On June 1, 2022, Mr. Koester resubmitted his repair report from a third-party firm. This third-party firm had a delay due to COVID. Mr. Koester received a response of "I will be out of the office from May 17th thru May 24th and will be returning to the office on the 24th". Clearly, Ms. Ragusa does not update at least her email.

23. On June 28, 2022, could only email to claim the 'office is swamped'.

24. On July 7, 2022, Ms. Regusa could only send an informal email with partially adjusting the estimate. However, Ms. Regusa deducted "depreciation" and a second "deductible".

25. On July 8, 2022, Mr. Koester emailed Ms. Regusa floor damage that was not noted previously. No acknowledgement by at least Ms. Regusa, nor never accounted for in any partial payment, communications, etc.

26. On July 8, 2022, Ms. Regusa (at least through her delay and denial process) claimed: "Replacement cost loss settlement will not apply to other classes of property separately described and specifically insured. We will pay no more than the least of the following amounts: (1) Replacement cost at the time of loss without deduction for depreciation; (2) The full cost of repair at the time of loss; (3) The limit of liability that applies to Coverage C, if applicable; (4) Any applicable special limits of liability stated in this policy; or (5) For loss to any item separately described and specifically insured in this policy, the limit of liability that applies to the item.

27. On July 8, 2022, Ms. Regusa then stated some buried policy statement of 'If the cost to repair or replace the property described in a. above is more than $2,500, we will pay no more than the actual cash value for the loss until the actual repair or replacement is complete'

28. On July 25, 2022, Ms. Regusa emailed to ask "Do you want me to just issue you a check?" At least Ms. Regusa was delaying and looking for reasons to deny.

29. On July 28, 2022, Ms. Regusa refused and/or was unwilling to answer anything by here response of "I am not prepared for the other issue with your claim yet" and "So will get back to you then" – without punctuation. Then, separately "Just to make sure,

what other questions besides the fact that we denied the portion of your claim?" – as if not able and/or willing to review the email chain. Ms. Regusa even said that she would get back to me.

30. On October 30, 2022, Mr. Koester again emailed Ms. Regusa for a status. The following week, Ms. Regusa gave all appearances of being 'brain dead' by asking questions showing her ignorance, lack of reading, etc., and/or asking the same over again.

31. On February 12, 2023, Mr. Koester again emailed Ms. Regusa.

32. On February 23, 2023, Ms. Regusa responded with "I am issuing you another payment".

33. On April 14, 2023, Mr. Koester again emailed Ms. Regusa as no payment has been sent. At least Ms. Regusa was delaying.

34. On July 3, 2023, Mr. Koester again emailed Ms. Regusa and Ms. Graham as no payment has been sent. At least Ms. Regusa was delaying.

35. On August 8, 2023, Ms. Regusa could only respond with "The stop payment on your check has cleared and the check has been reissued to the Rockford MN address". Again, too incompetent, inept, unknowledge able, etc. to actually perform at least her job and update Mr. Koester's current address. Additionally, At least Ms. Regusa refused to justify any of my questions on at least the payment.

36. On August 13, 2023, Mr. Koester emailed Ms., Regusa and Ms. Graham with another copy of the third-party firm's furniture report (previously ignored by Travelers) with Mr. Koester requesting acknowledgement from both Ms., Regusa and Ms. Graham for two (2) separate emails. No response by either party.

37. On October 24, 2023, Mr. Koester again emailed Ms., Regusa and Ms. Graham due to lack of response by either party.

38. **All representatives of Travelers, aka The Travelers Companies, Inc.; The Travelers Home and Marine Insurance Company; etc., have failed and refused to follow their own statements in Mr. Koester's insurance policy, of at least the following**:
- Loss Payment (Policy Page 33 of 68)
  - "**We will adjust all losses with you.**" – it seems dictated terms without working with Mr. Koester; no return of calls and e-mails.

- **"Loss will be payable 60 days after we receive your proof of loss and reach an agreement with you."** – it seems dictated terms without reaching an agreement with Mr. Koester, nor return of calls and/or e-mails; and delaying payment, much too far beyond 60 days, without paying interest due to their own delay and denials.
- Loss Payment (Policy Page 51 of 68) – Minnesota
  - **"We will adjust all losses with you."** – it seems dictated terms without working with Mr. Koester; no return of calls and/or e-mails
  - **"Loss will be payable within 5 working days." –** delaying payment, much too far beyond 5 days, without paying interest due to their own delay and denials.
- However, these same representatives will utilize an obscure and buried policy section, without referencing them to make it easier on their client, to reduce and delay any payments.

39. These same representatives of Travelers, aka The Travelers Companies, Inc.; The Travelers Home and Marine Insurance Company; etc., have exceeded the time frame multiple times, thus claim should be paid in full.

40. These same representatives of Travelers, aka The Travelers Companies, Inc.; The Travelers Home and Marine Insurance Company; etc., have never given a true and justifiable reason for denial, rather just looking for reasons to delay and deny. They could only state "the damages to the furniture were not consistent with a move, but wear and tear" even though at least the previous repair company by the mover acknowledged damages due to the move – as if these representatives know nothing, have no common sense, and are responding based on a pre-mediated response plan by Travelers, aka The Travelers Companies, Inc.; The Travelers Home and Marine Insurance Company; etc.

41. Mr. Koester has suffered, and will continue to suffer, special damages as a direct result and proximate result of at least the so-called determinations, denials, etc. that at least Mr. Ortiz and Ms. Regusa, personally and individually and while in the employment of Travelers, aka The Travelers Companies, Inc.; The Travelers Home and Marine Insurance Company; etc., caused to be filed.

### COUNT 1 — DETERMINE ADVERSE CLAIMS UNDER MINN. STAT. § 559.01

1. Mr. Koester reasserts the allegations set forth herein.

2. At least the so-called determinations, denials, etc. that at least Mr. Ortiz and Ms.

Regusa, personally and individually and while in the employment of Travelers, aka The Travelers Companies, Inc.; The Travelers Home and Marine Insurance Company; etc., caused to be filed have harmed Mr. Koester personally and individually and the property owned by Mr. Koester by asserting false and incomplete statements, claims, etc. to delay so-called determinations, denials, etc. and payments.

3. This Court can and should declare and order that at least the so-called determinations, denials, etc. that at least Mr. Ortiz and Ms. Regusa, personally and individually and while in the employment of Travelers, aka The Travelers Companies, Inc.; The Travelers Home and Marine Insurance Company; etc., caused to be filed against Mr. Koester personally and individually and the property owned by Mr. Koester are all void and of no effect.

### COUNT 2 — DECLARATORY JUDGMENT UNDER MINN. STAT. § 559.01, ET SEQ.

1. Mr. Koester reasserts the allegations set forth herein.

2. Pursuant to Minnesota Statutes Section 559.01, et seq., this Court can and should declare and order that at least the so-called determinations, denials, etc. that at least Mr. Ortiz and Ms. Regusa, personally and individually and while in the employment of Travelers, aka The Travelers Companies, Inc.; The Travelers Home and Marine Insurance Company; etc., caused to be filed are all void and of no affect.

3. At least Ortiz and Ms. Regusa, personally and individually and while in the employment of Travelers, aka The Travelers Companies, Inc.; The Travelers Home and Marine Insurance Company; etc., are allowed to take whatever time it may take and/or not even respond, but they require immendiate and full responses by My. Koester.

4. Travelers, aka The Travelers Companies, Inc.; The Travelers Home and Marine Insurance Company; etc., are allowed to cancel a policy if payments is even a second late, but they are allowed to take whatever time it may take and/or not even respond to make a partial payment.

### COUNT 3 — DEFAMATION

1. Mr. Koester reasserts the allegations set forth herein.

2. At least the so-called determinations, denials, etc. that at least Mr. Ortiz and Ms. Regusa, personally and individually and while in the employment of Travelers, aka The Travelers Companies, Inc.; The Travelers Home and Marine Insurance Company; etc., intentionally and with malice caused to be stated against Mr. Koester personally and

individually and the property owned by Mr. Koester contain false and/or incomplete statements, claims, etc. concerning Mr. Koester.

3.  These false statements, claims, etc. include, among many other false claims, false claims that Mr. Koester is a LIAR AND ATTEMPTING INSURANCE FRAUD. While not specifically stated by at least Mr. Ortiz and Ms. Regusa, personally and individually and while in the employment of Travelers, aka The Travelers Companies, Inc.; The Travelers Home and Marine Insurance Company; etc., it has been, and will continue to be, implied without legal basis, rules of law, justification, proof, etc.

4.  The false statements, claims, etc. made by at least Mr. Ortiz and Ms. Regusa, personally and individually and while in the employment of Travelers, aka The Travelers Companies, Inc.; The Travelers Home and Marine Insurance Company; etc., have been, and will continue to, deny repairs on Mr. Koester's property with at least additional mental and financial harm of being forced to live with at least damaged for many years.

5.  As a direct and proximate result of the false statements, claims, etc. made by at least Mr. Ortiz and Ms. Regusa, personally and individually and while in the employment of Travelers, aka The Travelers Companies, Inc.; The Travelers Home and Marine Insurance Company; etc., Mr. Koester has suffered, and will continue to suffer, special damages in an amount that will be proven.

### COUNT 4 — INTENTIONAL INFLICTION OF EMOTION AL DISTRESS

1.  Mr. Koester reasserts the allegations set forth herein.

2.  The actions and conduct of at least Mr. Ortiz and Ms. Regusa, personally and individually and while in the employment of Travelers, aka The Travelers Companies, Inc.; The Travelers Home and Marine Insurance Company; etc., were and are extreme and outrageous.

3.  The actions and conduct of at least Mr. Ortiz and Ms. Regusa, personally and individually and while in the employment of Travelers, aka The Travelers Companies, Inc.; The Travelers Home and Marine Insurance Company; etc., were and are so atrocious that they pass the boundaries of decency, and they are utterly intolerable in a civilized community.

4.  The actions and conduct of at least Mr. Ortiz and Ms. Regusa, personally and individually and while in the employment of Travelers, aka The Travelers Companies, Inc.; The Travelers Home and Marine Insurance Company; etc., were and are

Filed in District Court
State of Minnesota
2/6/2024 11:19 AM

intentional or reckless.

5.   No reasonable person could be expected to endure the actions and conduct of at least Mr. Ortiz and Ms. Regusa, personally and individually and while in the employment of Travelers, aka The Travelers Companies, Inc.; The Travelers Home and Marine Insurance Company; etc.

6.   The actions and conduct of at least Mr. Ortiz and Ms. Regusa, personally and individually and while in the employment of Travelers, aka The Travelers Companies, Inc.; The Travelers Home and Marine Insurance Company; etc., have caused Mr. Koester to suffer severe emotional distress.

7.   As a direct and proximate result of the actions and conduct of at least Mr. Ortiz and Ms. Regusa, personally and individually and while in the employment of Travelers, aka The Travelers Companies, Inc.; The Travelers Home and Marine Insurance Company; etc., Mr. Koester has suffered, and will continue to suffer, special damages in an amount that will be proven.


WHEREFORE, Mr. Koester requests the following relief:

1.   An order declaring that Travelers, aka The Travelers Companies, Inc.; The Travelers Home and Marine Insurance Company; etc., shall not cancel Mr. Koester's policy and/or shall not increase the related rates based on this lawsuit.

2.   An order declaring at least the 'closed claims' according to at least Mr. Ortiz and Ms. Regusa, personally and individually and while in the employment of Travelers, aka The Travelers Companies, Inc.; The Travelers Home and Marine Insurance Company; etc., shall be reopened immediately; and for Mr. Koester to determine what shall be covered and at current replacement costs.

3.   A money judgment entered against at least Mr. Ortiz and Ms. Regusa, personally and individually and while in the employment of Travelers, aka The Travelers Companies, Inc.; The Travelers Home and Marine Insurance Company; etc., for all amounts recoverable by Mr. Koester and against at least Mr. Ortiz and Ms. Regusa, personally and individually, under applicable law, with such amounts believed to be in excess of $50,000.00 and will be proven at trial.

4.   An order for interest at a minimum of eight (8%) percent per annum for all delayed and partial payments and repairs from the on or about date of occurrence of October 1, 2019, and as reported.

5.  An order for full repair of Mr. Koester's personal property, at his selected firm(s), and to only his satisfaction – including an order declaring that Travelers, aka The Travelers Companies, Inc.; The Travelers Home and Marine Insurance Company; etc., shall also pay any change in the related costs.

6.  A money judgment as sanctions entered against at least Mr. Ortiz and Ms. Regusa, personally and individually and while in the employment of Travelers, aka The Travelers Companies, Inc.; The Travelers Home and Marine Insurance Company; etc. for their inability and unwillingness to work with Mr. Koester per the insurance policy, the subsequent lies, delays, dictating terms, incorrect address, denials without justifiable responses, etc.

7.  An order awarding Mr. Koester an immediate return of his $1,000.00 deductible and all unpaid 'depreciation' deductions, plus at least interest, fees, etc.

8.  An order awarding Mr. Koester all witness fees and costs, and all other costs and expenses which are recoverable pursuant to applicable law.

9.  An order awarding Mr. Koester his time and costs as reasonable attorney fees and costs, as and if they are recoverable pursuant to applicable law, plus at least interest, fees, etc.

10. An order declaring that Travelers, aka The Travelers Companies, Inc.; The Travelers Home and Marine Insurance Company; etc., shall have any and all checks in Mr. Koester's hands within seven (7) calendar days. – as shall at least Mr. Ortiz and Ms. Regusa.

11. For such other and further relief as the Court may deem just and equitable.

Filed in District Court
State of Minnesota
2/6/2024 11:19 AM

## ACKNOWLEDGMENT

The undersigned hereby acknowledges that costs, disbursements, and reasonable attorney and witness fees may be awarded pursuant to Minnesota Statutes Section 549.211, subd. 2, to the party against whom the allegations in this proceeding are asserted.

January 21, 2024
Date

Signature

Name:    Jay Koester

Address: 6150 Boulder Ridge Drive

City, State, Zip: Rockford, Minnesota 55373

Telephone: 563-419-8335

E-mail: jayrkoester@yahoo.com

A copy of noted and/or future documents shall be served, at a later date, upon the Defendants or counsel for the Defendants via the Minnesota eFILE System and shall constitute due and proper service in lieu of personal service.



**RESTORATION PLUS LLC**

**MONTICELLO, MN**

**TIM ROGERS, OWNER**

**PHONE: 763-233-9323**

**EMAIL: SERVICE@RESTORATIONPLUSMN.NET**

**WWW.RESTORATIONPLUSMN.NET**

---

## FURNITURE DAMAGES ASSESSMENT
## & RESTORATION/REPAIR REPORT (REVISED/UPDATED)
## PREPARED FOR JAY KOESTER

---

### GENERAL SUMMARY ASSESSMENT:

My name is Tim Rogers, and I'm the owner of Restoration Plus LLC, out of Monticello, Minnesota. I am a master level technician in the furniture repair and refinishing industry, having earned my expertise over 12 years in the profession, with the majority of my business being warranty claims, such as through Guardsman, Uniters, and Guardian, as well as private direct-to-consumer business, such as with Mr. Koester, in this case.

I have also been called on many times by insurance companies to evaluate and report on damages caused by shipping, weather, vandalism, and/or poor workmanship; and would be considered an expert for the purposes of court testimony regarding such matters.

Mr. Koester sought my assessment to evaluate at least moving damages and another technician's attempted repairs arising when that moving company apparently hired him to resolve their damages to at least Mr. Koester's custom-made and/or Amish wood furniture. All pieces "repaired" by the other technician, after Mr. Koester had claimed moving damages against the moving company, have moderate to severe problems caused by the other technician's poor workmanship, which I would consider as shoddy and unprofessional at best, which have made everything worse and caused new and severe damages. Some pieces were also refused to be "repaired" likely because this technician's poor knowledge, skills, etc. – no "repair" report by this technician, nor the movers, was provided to Mr. Koester.

The types of damages I inspected are at least combinations of moving damage; refinishing flaws due to unprofessional techniques after accepted moving damage; and ill-prepared and/or unclean surfaces, dents, and scratches from movement and careless handling before coatings had been applied to fully cured areas; wood seam splits; and corresponding joint issues caused when the other technician used chemicals to remove/strip previous finishes.

Filed in District Court
State of Minnesota
2/6/2024 11:19 AM

Due to the number of accumulated (moving) problems and new damages from "repairs", with severities ranging from moderate to severe, the overall assessment of these damages is what I would consider severe.

All items were either refused to be repaired or transported off-site for "repair" – likely damaged more while transported for the off-site "repairs". Then, for this other technician to give Mr. Koester excuses, lies, hostility, etc. for the same is unprofessional and unacceptable.

Mr. Koester stated the unprofessional and unknowing prior technician from the mover who attempted "repairing" Mr. Koester's furniture, that were previously accepted as moving damage, was Brad Jelle, according to the attached business card image here:



I have described the types and extent of damages/issues/resolutions/estimates regarding each piece, including photos from myself and from Mr. Koester, to help illustrate my findings in these multiple pages as follows:

## DINING TABLE WITH 2 LEAVES:

ISSUES:          The dining table's central side top area, including its leaves, were damaged during the move; then was apparently "repaired" by another individual after Mr. Koester had claimed moving damages against his moving company. This item is part of an Amish dining set consisting of: 42-inch diameter table with pedestal base for a 30-inch height; two (2) 12-in by 42-inch leaves; and six (6) chairs.

I would consider the workmanship of this repair attempt to be additional damage and to be shoddy at best.

The additional damage was noted at the time of returning of the piece after the shoddy repair attempt, and nothing was done to correct it. The clear coat refinish was done most likely in polyurethane in what looks like a semi-gloss sheen. There's a roughly ten (10") inch long diagonal dull area across the grain of one (1) leaf where the finish was likely contacted before fully drying and setting up to its full hardness. Additionally, the application of the new finish has rippling like an orange peel, some evidence of surface contamination like dust or other particulates now locked into the finish, giving it a bumpy appearance.

The entire surface has been repeatedly dusted and annually conditioned with the recommended natural (Amish) wood treatment only to have the "repairs" show more. The surfaces did not previously have a clear coat finish, most likely using polyurethane, and was natural and stained (Amish) wood. The Amish wood was likely finished with hard wax oils originally. The other technician did not use the same Amish type finish, thus causing additional damages. The additional damage was noted at the time of returning of the piece after the shoddy repair attempt, and nothing was done to correct it. The proposed stripping and refinishing processes will be more labor intensive and the related materials are more expensive.

RESOLUTION:      Recommended resolution for these damages is to strip, re-sand smooth, and then re-stain with clear-coat refinishing over the entire top of the table in a controlled professional shop environment. Both top ends of the table and the 2 leaves must all be done simultaneously to ensure uniform finish and coloring.

ESTIMATE:        My December 2021 estimate for this work would be starting at $1,600 for the labor, $200 for the transportation of the table's top (removed from its base), and approximately $150 for materials at the time of this submittal.

***Sub-Total December 2021 Estimate for this Dining Table with 2 Leaves: $1,950***

The following pictures are post-move as delivered and post "repairs". Photos are by Tim Rogers and after "repairs", unless otherwise noted.



Delivered - Photo by Jay Koester



Delivered - Photo by Jay Koester

Filed in District Court
State of Minnesota
2/6/2024 11:19 AM





Filed in District Court
State of Minnesota
2/6/2024 11:19 AM



## SMALL COFFEE TABLE:

ISSUES:                During the move a roughly three (3") to four (4") inch diameter area across the grain where large dents occurred, but the "repairing" individual claimed was not related to moving and refused to attempt to raise the dented wood, or sand it smoother to help alleviate the surface level differences – likely because he did not know what to do. This item is part of an Amish set consisting of: two (2) legged end tables; and the legged coffee table with custom drawer.

The entire surface has been repeatedly dusted and annually conditioned with the recommended natural (Amish) wood treatment. The surfaces do not have a clear coat and was natural and stained (Amish) wood. The Amish wood was likely finished with hard wax oils originally. The Amish wood was likely finished with hard wax oils originally. The proposed stripping and refinishing processes will be more labor intensive and the related materials are more expensive.

RESOLUTION:        Recommended resolution is to strip, re-sand smooth, and then refinish over the entire top of the table in a controlled professional furniture repair shop.

ESTIMATE:            My December 2021 estimate for this work would be starting at $850 for the labor, $100 for the transportation of the whole table, and approximately $150 for materials at the time of this submittal.

***Sub-Total December 2021 Estimate for this Coffee Table: $1,100***

The following pictures are post-move as delivered. Photos are by Tim Rogers, unless otherwise noted.



Delivered - Photo by Jay Koester

Filed in District Court
State of Minnesota
2/6/2024 11:19 AM





## BAR HEIGHT (PUB) TABLE:

ISSUES:                Bar height pub-style table top was damaged during the move. This item is part of an Amish set consisting of: 36-inch diameter table with tall pedestal base for a 36-inch height; and two (2) stools.

The prior repair technician then refinished with a clear coat, most likely using polyurethane, but the workmanship was sloppy, leaving evidence of tape lines, clear coating drip blobs cured around the table top's edge and is considered to be additional damage.

I would consider the workmanship of this repair attempt to be additional damage and to be shoddy at best.

The entire surface has been repeatedly dusted and annually conditioned with the recommended natural (Amish) wood treatment. The surfaces did not previously have a clear coat, having had its natural (Amish) wood treatment. The surfaces did not previously have a clear coat finish, most likely using polyurethane, and was natural and stained (Amish) wood. The Amish wood was likely finished with hard wax oils originally. The other technician did not use the same Amish type finish, thus causing additional damages.

The graining on the top has dulled due to not properly cleaning the surface prior to refinishing. The other technician did not use the same Amish type finish, thus causing additional damages. The proposed stripping and refinishing processes will be more labor intensive and the related materials are more expensive. The additional damage was noted at the time of returning of the piece after the shoddy repair attempt, and nothing was done to correct it.

RESOLUTION:        Recommended resolution is to strip, re-sand smooth, re-stain, and then correctly finish according to Amish methods over the entire top of the table in a controlled professional shop environment.

ESTIMATE:                My December 2021 estimate for this work would be starting at $1,350 for the labor, $100 for the transportation of the table's top, and approximately $150 for materials at the time of this submittal.

***Sub-Total December 2021 Estimate for this Dining Table: $1,600***

The following pictures are post-move as delivered and post "repairs". Photos are by Tim Rogers and after "repairs", unless otherwise noted.

Filed in District Court
State of Minnesota
2/6/2024 11:19 AM



Delivered – Photo by Jay Koester



Filed in District Court
State of Minnesota
2/6/2024 11:19 AM





"Repaired" - Photo by Jay Koester

## LONG DRESSER:

ISSUES:            During the move, a large scratch/gouge was created in the top and a smaller one on the side. This item is part of an Amish bedroom set consisting of: queen-sized headboard, footboard, and siderails; chest of drawers with large mirror; tall chest of drawers; and two (2) night stands.

The prior technician claimed that the side scratch/gouge was not from moving, rather from the Amish builders, and refused to do anything. Having worked on many Amish made pieces, I am certain they would not have permitted that kind of damage to leave their shops.

Its top was then at least striped and refinished. The clear coat, most likely using polyurethane, has rippling, with dust and other contaminants locked into it; and the coloring does not match the rest of the piece. Its lamination seams are splitting at both left and right ends – likely due to the chemicals that were used during previous attempted repairing/refinishing, effectively dissolving the adhesives used during original manufacturing, which caused additional damage that was noted at the time of returning of the piece after the shoddy repair attempt, with nothing further done to correct it, according to Mr. Koester.

I would consider the workmanship of this repair attempt to be additional damage and to be shoddy at best.

The individual (top) boards are warping away from each other horizontally, as well as upward/downward, creating a gap/split and a ridge. This splitting damage may be permanent, but methods might be used to hopefully prevent further splitting and/or reduce the current issues. This splitting is likely not repairable, so that a recommended new top must be fabricated, sanded, stained, finished and installed.

On the dresser's left side facing, the top's horizontal boards have delaminated and are separating away from each other (see photos), as well as is the front facing fascia where it's glued to the left side panel. The likely cause of this was when the top was stripped and/or prepared for refinishing, whatever chemicals used were allowed to penetrate the glued joints and weaken them, then as the wood naturally expands and contracts, the glued joints failed prematurely.

Additionally, there are physical damages done to the left facing side over which was re-stained and re-finished, which served to darken the damaged area, making it more noticeable. The surfaces did not previously have a clear coat, most likely using polyurethane, and was natural (Amish) wood. The Amish wood was likely finished with hard wax oils originally. The other technician did not use the same Amish type finish, thus causing additional damages. The proposed stripping and refinishing processes will be more labor intensive and the related materials are more expensive.

RESOLUTION:      With the top, it could be entirely replaced; or, the original top would need to be stripped, re-sanded, re-stained and then refinished according to Amish techniques. With the side, it needs to be stripped, re-sanded, re-stained and then refinished.

ESTIMATE(S):

1. If the top is replaced, I'd estimate (from December 2021) the cost of new wood to be $500. Once that new fabricated top is made, it would be sanded, stained and finished for $750, plus the estimated cost of other materials at around $150 at the time of this submittal.

2. If the top is refinished and mitigation attempts are made regarding the splitting (without

guarantees as to ultimate results, but definitely improved), I'd estimate (from December 2021)—
in combination with the side refinishing—that the combined labor would be $1,750, plus $200
for transportation, plus $200 for materials at the time of this submittal.

***Sub-total December 2021 Estimates (respectively): $1,400 to $2,150***

The following pictures are post-move as delivered and post "repairs". Photos are by Tim Rogers and
after "repairs", unless otherwise noted.



Delivered - Photo by Jay Koester



Filed in District Court
State of Minnesota
2/6/2024 11:19 AM

Delivered - Photo by Jay Koester





Filed in District Court
State of Minnesota
2/6/2024 11:19 AM





Filed in District Court
State of Minnesota
2/6/2024 11:19 AM





Filed in District Court
State of Minnesota
2/6/2024 11:19 AM





Filed in District Court
State of Minnesota
2/6/2024 11:19 AM



## TALL DRESSER:

ISSUES:            The tall dresser's top was refinished in a clear coat by the "repair firm/person". The coating shows signs of impurities during the drying/curing process, such as dust, as well as areas of rippling and/or bumps. This item is part of an Amish bedroom set consisting of: queen-sized headboard, footboard, and siderails; chest of drawers with large mirror; tall chest of drawers; and two (2) night stands.

I would consider the workmanship of this repair attempt to be additional damage and to be shoddy at best.

The entire surface has been repeatedly dusted and annually conditioned with the recommended natural (Amish) wood treatment. The surfaces did not previously have a clear coat, most likely using polyurethane, and was natural (Amish) wood. The Amish wood was likely finished with hard wax oils originally. The other technician did not use the same Amish type finish, thus causing additional damages. The proposed stripping and refinishing processes will be more labor intensive and the related materials are more expensive.

RESOLUTION:       With the top, it could be entirely replaced; or, the original top would need to be stripped, re-sanded, re-stained and then refinished. With the sides, they need to be stripped, re-sanded, re-stained and then refinished.

ESTIMATE(S):

1.  If the top is replaced, I'd estimate (from December 2021) the cost of new wood to be $500. Once that new top is fabricated, it would be sanded, stained and finished for $500, plus the estimated cost of other materials at around $150 at the time of this submittal.

2.  If the top is refinished and mitigation attempts are made regarding the splitting (without guarantees as to ultimate results, but definitely improved), I'd estimate (from December 2021) —in combination with the side refinishing—that the combined labor would be $1,200, plus $200 for transportation, plus $400 for materials at the time of this submittal.

***Sub-total December 2021 Estimates (respectively): $1,150 to $1,800***

The following pictures are post-move as delivered and post "repairs". Photos are by Tim Rogers and after "repairs", unless otherwise noted.





Filed in District Court
State of Minnesota
2/6/2024 11:19 AM



## NIGHT STAND/TABLE:

ISSUES:                The night table's top had water damage from the moving truck and/or the moving staff. The night table's drawer was also most likely damaged during transport due to improper padding and/or movement. This item is part of an Amish bedroom set consisting of: queen-sized headboard, footboard, and siderails; chest of drawers with large mirror; tall chest of drawers; and two (2) night stands.

The night table's top was refinished with a clear coating, most likely using polyurethane. It has large areas of impurities in the finish where the previous technician allowed dust and debris to cure into the finish. As with the two (2) larger dressers, chemicals used during the previous technician's stripping and preparations were allowed to penetrate into the joints of the top, leading to failures of the jointed boards, even causing a cross-grain splitting of the wood. This splitting is not repairable, so that a new top must be fabricated, sanded, stained, finished and installed.

At one of the drawer's left side facing top corner a repair of some kind of impact damages was attempted, but the area was poorly worked and needs to be re-repaired and refinished.

I would consider the workmanship of this repair attempt to be additional damage and to be shoddy at best.

According to Mr. Koester, these additional damages were noted at the time the piece was returned after the shoddy repair attempt, and nothing was done to correct it. The second and matching night stand was undamaged.

The entire surface has been repeatedly dusted and annually conditioned with the recommended natural (Amish) wood treatment only to have the "repairs" show more. The surfaces did not previously have a clear coat, most likely using polyurethane, and was natural (Amish) wood. The Amish wood was likely finished with hard wax oils originally. The other technician did not use the same Amish type finish, thus causing additional damages. The proposed stripping and refinishing processes will be more labor intensive and the related materials are more expensive.

RESOLUTION:        The top must be stripped, re-sanded, re-stained and refinished.

ESTIMATE(S):        To replace the top, I'd estimate (from December 2021) the cost of new wood to be $350. Once that new top is fabricated, it would be sanded, stained, finished and installed for $600, plus the re-repairing of the drawer face at $150, plus estimated cost of other materials at around $150 at the time of this submittal.

### *Sub-Total December 2021 Estimate: $1,250*

The following pictures are post-move as delivered and post "repairs". Photos are by Tim Rogers and after "repairs", unless otherwise noted.



Delivered - Photo by Jay Koester



Delivered - Photo by Jay Koester

Filed in District Court
State of Minnesota
2/6/2024 11:19 AM





Filed in District Court
State of Minnesota
2/6/2024 11:19 AM





Filed in District Court
State of Minnesota
2/6/2024 11:19 AM





## 6' TALL BOOKCASE

ISSUES:             This Amish bookcase is approximate six (6') foot tall by four (4') foot wide bookshelf was severely damaged during the move, as evidenced by separating joints on the left-side facing side panel when the entire piece was either twisted and/or impacted from the rear, such as might happen if dropped or crashed into by a hard object. This has made the entire boxed frame to become un-true so that has gone out of square at its corners (as evidenced by the failures of the upper back panel fastener joints being strained. The "repairing" individual claimed was not related to moving and refused to attempt to any repairs – likely because he did not know what to do. The individual boards are warping away from each other horizontally, as well as upward/downward, creating a gap/split and a ridge. This splitting damage may be permanent, but methods might be used to hopefully prevent further splitting and/or reduce the current issues. This splitting is likely not repairable, so that a new side must be fabricated, sanded, stained, finished and installed.

On the front edge of the fixed shelf was damaged during the move and the movers attempted to repair with mis-colored wood filler and/or glue. I would consider the workmanship of this repair attempt to be additional damage and to be shoddy at best.

On the right-side facing side panel are several areas of surface impact dents and scratched and/or gouges.

The entire surface has been repeatedly dusted and annually conditioned with the recommended natural (Amish) wood treatment only to have the "repairs" show more. The Amish wood was likely finished with hard wax oils originally. The other technician did not use the same Amish type finish, thus causing additional damages. The proposed stripping and refinishing processes will be more labor intensive and the related materials are more expensive.

RESOLUTION:       Ideally, the piece should be disassembled, rebuilt to square, repairs made to surface damages, and attempt to re-join the failing left side seam (though this may be impossible, and only mitigation improvements might be achieved). All of this work is extensive and would include some refinishing.

ESTIMATE:         Labor to attempt the above-described repairs would be about $1,500, plus materials $500 at the time of this submittal (from December 2021).

*Sub-total December 2021 Estimate:  $2,000*

The following pictures are post-move as delivered Photos are by Tim Rogers, unless otherwise noted.

Filed in District Court
State of Minnesota
2/6/2024 11:19 AM



Delivered - Photo by Jay Koester

Filed in District Court
State of Minnesota
2/6/2024 11:19 AM



Delivered - Photo by Jay Koester



Delivered - Photo by Jay Koester

Filed in District Court
State of Minnesota
2/6/2024 11:19 AM





Exhibit B

Filed in District Court
State of Minnesota
2/6/2024 11:19 AM





Filed in District Court
State of Minnesota
2/6/2024 11:19 AM





Filed in District Court
State of Minnesota
2/6/2024 11:19 AM



## <u>CUSTOM-MADE PIECE W/ SHELVES:</u>

ISSUES:               This custom-made TV stand had a scratch/gouge in the top caused by Mr. Koester's former landlord (see below image) immediately after moving into a rental unit and was not fully unpacked. This custom item has been part of an Amish bedroom set consisting of: queen-sized headboard, footboard, and siderails; chest of drawers with large mirror; tall chest of drawers; and two (2) night stands.



The former landlord refused to have it professionally repaired and would only (unprofessionally) repair it herself – not professionally by others. Her standard of acceptable is far below normal American people, and/or just wants to damage personal property of others more. I would consider the workmanship of this repair attempt to be additional damage and to be shoddy at best. The additional damage was noted at the time of the shoddy repair attempt, and nothing was done to correct it – even though was promised in writing by Mr. Koester's former landlord.

The table with shelves' top was refinished with a clear coating, most likely using polyurethane, by Mr. Koester's former landlord immediately after moving into a rental and not fully unpacked, but the coating has large areas of ripples and impurities cured into the finish. It also has large areas of impurities in the finish where the former landlord allowed dust and debris to cure into the finish—even hair (head, body, and/or possibly pubic) are visible stuck into the finish—giving it a bumpy appearance. The clear coat refinish was done most likely in polyurethane in what looks like a semi-gloss sheen. This was simply poor workmanship and careless preparations with unprofessional technique.

There are at least two (2) areas of lighter stain and dull area with the grain where the stain and finish were likely contacted before fully drying and setting up to its full hardness for an unprofessional gouge repair. Additionally, the application of the new finish has rippling like an orange peel. The entire top must be stripped, re-sanded, re-stained, and refinished. The stripping process will be more labor intensive and the materials are move expensive.

The entire surface has been repeatedly dusted and annually conditioned with the recommended natural (Amish) wood treatment only to have the "repairs" show more. The surfaces did not previously have a clear coat, most likely using polyurethane, and was natural (Amish) wood. The Amish wood was likely finished with hard wax oils originally. The former landlord did not use the same Amish type finish, thus causing additional damages. The proposed stripping and refinishing processes will be more labor intensive and the related materials are more expensive.

RESOLUTION:        With the top, it could be entirely replaced; or, the original top would need to be stripped, re-sanded, re-stained and then refinished. With the sides, they need to be stripped, re-sanded, re-stained and then refinished to match.

ESTIMATE:        Labor to strip, re-sand, re-stain, and refinish is about $1,150, plus materials $350 at the time of this submittal (from December 2021).

*Sub-total December 2021 Estimate: $1,500*

The following pictures are post-move as delivered and post "repairs". Photos are by Tim Rogers and after "repairs", unless otherwise noted.



Damage - Photo by Jay Koester



Post-Repair- Photo by Jay Koester



Filed in District Court
State of Minnesota
2/6/2024 11:19 AM





Filed in District Court
State of Minnesota
2/6/2024 11:19 AM





Filed in District Court
State of Minnesota
2/6/2024 11:19 AM



**In summation**, the work necessary to repair and attempt to repair the damages to Mr. Koester's multiple pieces of furniture is extensive, time intensive, and requires a professional with a dedicated shop to achieve the quality of results for this custom-made furniture. Great care must be taken when handling these pieces to and from a shop. Where possible, guarantees will be stated prior to work starting, with both Mr. Koester and myself agreeing to our mutual understanding of expected outcomes per furniture piece – as will expected turn-around times for each trip so that Mr. Koester does not need to live similar to a homeless person. Additionally, I can provide a certificate of liability insurance, with Mr. Koester listed as an insured party.

**Please note that additional and increased pricing may occur once authorization to begin is received.**

The December 2021 sub-totals and total amount of <u>estimates</u> (approximately at the time of this submittal and <u>without</u> sales tax, pick-up costs, return costs, etc.) are as follows:

| ITEMS | SUB-TOTALS |
|---|---|
| 1. DINING TABLE WITH 2 LEAVES: | $1,950 |
| 2. SMALL COFFEE TABLE: | $1,100 |
| 3. BAR HEIGHT TABLE: | $1,600 |
| 4. LONG DRESSER | $1,400 to $2,150 |
| 5. TALL DRESSER | $1,150 to $1,800 |
| 6. NIGHT TABLE | $1,250 |
| 7. BOOKSHELF | $2,000 |
| 8. CUSTOM TABLE WITH SHELVES | $1,500 |
| **TOTAL:** | **$11,950 to $13,350 (Estimated)** |
| | **(December 2021)** |

**From:** Jay Koester <jayrkoester@yahoo.com>
**Sent:** Friday, July 08, 2022 2:28 PM
**To:** Ragusa, Robin <RRAGUSA@travelers.com>
**Subject:** RE: [External] Re: claim ██2304





Exhibit C

Filed in District Court
State of Minnesota
2/6/2024 11:19 AM

What have you covered?

Deductible was already taken out with previous payment. Why trying to take twice?

There should be no depreciation as I have replacement coverage.

Were the attached included? I sent pictures previously. Floor damage from movers.

Sent from Yahoo Mail on Android.  Please forgive any typos, errors. etc.

Exhibit C

Jay Koester

Filed in District Court
State of Minnesota
2/6/2024 11:19 AM
U-4283.4(2)

| Article | Number (Each) | Description of Damage | Estimated Replacement Cost Today (Each) | Local Sales Tax | Estimated Shipping & Handling (S&H); or Delivery | Estimated Time to Shop and/or Locate (Hours) | Hourly Billable Rate | Total Claimed Value | Remarks |
|---|---|---|---|---|---|---|---|---|---|
| Initial Claim | | | | | | | | | |
| Plunger | 1 | | | | | | | | Left in own bucket; and placed in garage with many other boxes |
| | | Lost/Undelivered - Now **Stolen** | $18.32 | 8.00% | $0.00 | 0.25 | $168.00 | $61.79 | |
| Toilet Snake | 1 | | | | | | | | Left in own bucket; and placed in garage with many other boxes |
| | | Lost/Undelivered - Now **Stolen** | $62.35 | 8.00% | $0.00 | 0.25 | $168.00 | $109.34 | |
| 2 Buckets for Above | 2 | | | | | | | | For claimed 'Plunger' and 'Toilet Snake'; and placed in garage with many other boxes |
| | | Lost/Undelivered - Now **Stolen** | $27.99 | 8.00% | $0.00 | 0.25 | $168.00 | $102.46 | |
| Charcoal | 1 | | | | | | | | Left in ORIGINAL packaging; and left in garage with many other boxes |
| | | Lost/Undelivered - Now **Stolen** | $64.89 | 8.00% | $0.00 | 0.25 | $168.00 | $112.08 | |
| Dry Suit | 1 | | | | | | | | Packed into claimed and own 'Dive Bag'; and placed in garage with many other boxes |
| | | Lost/Undelivered - Now **Stolen** | $3,299.95 | 8.00% | $0.00 | 1.50 | $168.00 | $3,815.95 | |
| Thermal Liner | 1 | | | | | | | | Packed into claimed and own 'Dive Bag'; and placed in garage with many other boxes |
| | | Lost/Undelivered - Now **Stolen** | $399.95 | 8.00% | $0.00 | 0.00 | $168.00 | $431.95 | |
| SCUBA Fins (2 in Set) | 1 | | | | | | | | Packed into claimed and own 'Dive Bag'; and placed in garage with many other boxes |
| | | Lost/Undelivered - Now **Stolen** | $306.73 | 8.00% | $0.00 | 0.50 | $168.00 | $415.27 | |
| Miscellaneous Dry Suit Inflator Hoses (at least 4) | 1 | | | | | | | | Packed into claimed and own 'Dive Bag'; and placed in garage with many other boxes |
| | | Lost/Undelivered - Now **Stolen** | $420.00 | 8.00% | $0.00 | 0.00 | $168.00 | $453.60 | |
| Dive Bag | 1 | | | | | | | | Original Dive Bag when purchased claimed 'Dive Suit'; and placed in garage with many other boxes |
| | | Lost/Undelivered - Now **Stolen** | $306.00 | 8.00% | $0.00 | 0.00 | $168.00 | $330.48 | |
| Snow Melt | 2 | | | | | | | | Left in ORIGINAL packaging; and placed in garage with many other boxes |
| | | Lost/Undelivered - Now **Stolen** | $27.99 | 8.00% | $0.00 | 0.25 | $168.00 | $102.46 | |
| Space Heater | 1 | | | | | | | | Packed in ORIGINAL Box and packaging; and placed in garage with many other boxes |
| | | Lost/Undelivered - Now **Stolen** | $57.38 | 8.00% | $0.00 | 0.25 | $168.00 | $103.97 | |
| 3-D Blu-Ray Player | 1 | | | | | | | | Packed in ORIGINAL Box and packaging; and placed in garage with many other boxes |
| | | Lost/Undelivered - Now **Stolen** | $1,689.97 | 8.00% | $0.00 | 1.00 | $168.00 | $1,993.17 | |
| | | | | | | | **SUBTOTAL** | $8,032.50 | |
| Initial Claim | | | | | | | | | |
| 'Band of Brothers' DVD Tin | 1 | | | | | | | | Packed in Nightstand/End Table from Living Room that loaders moved inverted |
| | | Lost/**Stolen** | $42.13 | 8.00% | $5.99 | 0.25 | $168.00 | $93.49 | |
| Escape from Alcatraz' DVD | 1 | | | | | | | | Packed in Nightstand/End Table from Living Room that loaders moved inverted |
| | | Lost/**Stolen** | $29.01 | 8.00% | $5.99 | 0.25 | $168.00 | $79.32 | |
| 'The Shawshank Redemption' DVD | 1 | | | | | | | | Packed in Nightstand/End Table from Living Room that loaders moved inverted |
| | | Lost/**Stolen** | $22.89 | 8.00% | $5.99 | 0.25 | $168.00 | $72.71 | |
| | | | | | | | **SUBTOTAL** | $245.52 | |
| Initial Claim | | | | | | | | | |
| Dive Bag | 1 | | | | | | | | Mishandled - Contained delivered wetsuits, fins, etc. |
| | | Ripped Pocket/Handle | $306.00 | 8.00% | $0.00 | 0.25 | $168.00 | $372.48 | |
| Samsung Washer Pedestal | 1 | Parts Missing | $259.99 | 8.00% | $69.99 | 0.25 | $168.00 | $392.78 | Trim pieces missing |
| Samsung Dryer Pedestal | 1 | Parts Missing | $259.99 | 8.00% | $69.99 | 0.25 | $168.00 | $392.78 | Trim pieces missing |
| Storage Totes | 2 | | | | | | | | Loaders put in middle of garage and pushed over; and/or transported inverted |
| | | Damaged by Loaders | $27.99 | 8.00% | $0.00 | 0.15 | $168.00 | $85.66 | |
| TV Console | 1 | | | | | | | | Damaged by Driver and/or Loaders/Unloaders by IMPROPER stacking in truck and/or mishandling |
| | | Damaged - Out of Level and Scratches | $700.00 | 8.00% | $100.00 | 1.00 | $168.00 | $1,024.00 | |
| Oak Bookcase | 1 | | | | | | | | "Supposedly" Repaired - UNACCEPTABLE as the side is still split - repairer does NOT know how to fix |
| | | Split Side and Mark at Bottom | $700.00 | 8.00% | $75.00 | 1.00 | $168.00 | $999.00 | |

Exhibit D

62-CV-24-721

CASE 0:24-cv-00639-SRN-TNL   Doc. 1-1   Filed 02/29/24   Page 60 of 84

Filed in District Court
State of Minnesota
2/6/2024 11:19 AM
U-4284

Jay Koester

| Article | Number (Each) | Description of Damage | Estimated Replacement Cost Today (Each) | Local Sales Tax | Estimated Shipping & Handling (S&H); or Delivery | Estimated Time to Shop and/or Locate (Hours) | Hourly Billable Rate | Total Claimed Value | Remarks |
|---|---|---|---|---|---|---|---|---|---|
| 36" Oak Pub Table (Set) | 1 | | | | | | | | "Supposedly" Repaired - UNACCEPTABLE as has unfinished edges and dull top (likely from NOT proper cleaning prior to applying Poly finish) |
| | | Dents, Dings, Etc. | $1,200.00 | 8.00% | $75.00 | 1.00 | $168.00 | $1,539.00 | |
| 42" Oak Table Leaf (Set) | 1 | | | | | | | | "Supposedly" Repaired - UNACCEPTABLE as scratch is still evident; and does NOT match rest |
| | | Scratch, Dent, Etc. | $3,200.00 | 8.00% | $100.00 | 2.00 | $168.00 | $3,892.00 | |
| Oak Nightstand (Part of Bedroom Set) | 1 | | | | | | | | "Supposedly" Repaired - UNACCEPTABLE as Drawer 'Hit' was NOT touched; the top was finished with a Poly finish that does NOT match rest (as has none); and the top now has a crack and unevenness |
| | | Ding, Mark, Etc. | $4,200.00 | 8.00% | $150.00 | 2.00 | $168.00 | $5,022.00 | |
| Oak Dresser (Part of Bedroom Set) | 1 | | | | | | | | "Supposedly" Repaired - UNACCEPTABLE as scratch on side was NOT touched, except to apply Poly over and to claimed done by Amish manufacturer; and the top was finished with a Poly finish that does NOT match rest (as has none) |
| | | Scratches, Etc. | $4,200.00 | 8.00% | $140.00 | 2.00 | $168.00 | $5,012.00 | |
| Epson WF-2750 | 1 | | | | | | | | I have tried multiple ink cartridges and still NOT printing; and the Document Feeder RUINS documents |
| | | Mishandled - NO Longer Prints | $136.06 | 8.00% | $0.00 | 0.50 | $168.00 | $230.94 | |
| Miscellaneous Items | 1 | Various Damage for Mishandling; and Completing the required United Paperwork | $2,500.00 | 0.00% | $0.00 | 0.00 | $168.00 | $2,500.00 | I was required to complete additional paperwork as REQUIRED by United staff to further delay processing, even when was detailed in an e-mail |
| | | | | | | | **SUBTOTAL** | $21,462.64 | |
| Initial Claim | | | | | | | | | |
| Required Unpacking by United - Same Price as provided by Local Salesman for United to Pack for my move | 1 | EXTRA Labor that was NOT Warranted by United | $2,421.73 | 0.00% | $0.00 | 0.00 | $168.00 | $2,421.73 | I spent the Christmas 2019 Holidays Unpacking, rather than with Family; and when United was fully aware of the FACT that I would be moving again within a year |
| Required Repacking by United - Same Price as provided by Local Salesman for United to Pack for my move | 1 | EXTRA Labor that was NOT Warranted by United | $2,421.73 | 0.00% | $0.00 | 0.00 | $168.00 | $2,421.73 | I spent the Christmas 2019 Holidays Repacking, rather than with Family; and when United was fully aware of the FACT that I would be moving again within a year |
| | | | | | | | **SUBTOTAL** | $4,843.46 | |
| Secondary Claim | | **NEVER REQUESTED INSPECTION AS CLAIMED BY UNITED!** | | | | | | | |
| Mickey and Goofy Salt and Pepper Shaker Set | 1 | Smashed Beyond Repair | $100.00 | 8.00% | $50.00 | 3.00 | $168.00 | $662.00 | Collectible - NO Longer Made -- Found due to required unpacking/Repacking by United |
| Goofy Figurine Tipping Hat | 1 | Smashed Beyond Repair | $100.00 | 8.00% | $50.00 | 3.00 | $168.00 | $662.00 | Collectible - NO Longer Made -- Found due to required unpacking/Repacking by United |
| Goofy Olympic Champ Stained-Glass Lamp/Light -- Collectible Limited Edition of 1,500 | 1 | Stained-Glass Shade Cracked | $1,000.00 | 8.00% | $150.00 | 3.00 | $168.00 | $1,734.00 | Collectible - NO Longer Made -- Found due to required unpacking/Repacking by United |
| | | | | | | | **SUBTOTAL** | $3,058.00 | |

Exhibit D

Jay Koester

| Article | Number (Each) | Description of Damage | Estimated Replacement Cost Today (Each) | Local Sales Tax | Estimated Shipping & Handling (S&H); or Delivery | Estimated Time to Shop and/or Locate (Hours) | Hourly Billable Rate | Total Claimed Value | Remarks |
|---|---|---|---|---|---|---|---|---|---|
| <u>Secondary Claim</u> | | | | | | | | | |
| Required Unpacking by United - Same Price as provided by Local Salesman for United to Pack for my move | 1 | EXTRA Labor that was NOT Warranted by United | $2,421.73 | 0.00% | $0.00 | 0.00 | $168.00 | $2,421.73 | I spent the Christmas 2019 Holidays Unpacking, rather than with Family; and when United was fully aware of the FACT that I would be moving again within a year |
| Required Repacking by United - Same Price as provided by Local Salesman for United to Pack for my move | 1 | EXTRA Labor that was NOT Warranted by United | $2,421.73 | 0.00% | $0.00 | 0.00 | $168.00 | $2,421.73 | I spent the Christmas 2019 Holidays Repacking, rather than with Family; and when United was fully aware of the FACT that I would be moving again within a year |
| | | | | | | | SUBTOTAL | $4,843.46 | |

| | | |
|---|---|---|
| GRAND TOTAL | $42,485.58 | Specifically PAID for Full Replacement Coverage - How hard is that to understand? |
| | $51,100.00 | Full Value Coverage by Weight |
| | $62,500.00 | Home Insurance Coverage (Approximate) |

Exhibit D

# Replacements: Closest Found Item(s)

Charcoal @ $64.89 + 8% Tax + S&H
https://www.walmart.com/ip/Kingsford-Products-32107-Original-Charcoal-20-Lb-2-Pk-Quantity-1/752845418

Dry Suit @ $3,299.95 + 8% Tax + S&H
https://www.amazon.com/dp/B0067JNIQ6/ref=asc_df_B0067JNJHO1571...01008005&creative=395261&creativeASIN=B0067JNJHO&linkCode=asn?th=1&psc=1

Thermal Liner @ $399.95 + 8% Tax + S&H
https://www.amazon.com/Bare-Drysuit-Polarwear-Undergarment-Thermal/dp/B07BNF7K69/ref=pd_sbs_468_4/144-1508536-9185531?_encoding=UTF8&pd_rd_i=B07BNF7K69&pd_rd_r=51248c7c-39cb-43d2-98b9-87ea8b98accc&pd_rd_w=Hr8Kq&pd_rd_wg=nGXhi&pf_rd_p=029ee61c-9f67-49b2-87f7-0369339e00b3&pf_rd_r=1VBYKF83SHNPDYB6K3TW&refRID=1VBYKF83SHNPDYB6K3TW

Scuba Fins @ $306.73 + 8% Tax + S&H
https://www.amazon.com/dp/B01KINJR48/ref=asc_df_B01KINJR481571223600000?tag=shopz0d-20&ascsubtag=shopzilla_mp_1299-20;1571360095668263619161007030200805&creative=395261&creativeASIN=B01KINJR48&linkCode=asn

Miscellaneous Dry Suit (Inflator) Hoses @ $70.00 Each + 8% Tax + S&H
INCREASE/MULTIPLY FOR SIX (6) TO $420.00 + 8% Tax + S&H
https://www.shop709.com/products/28-dry-suit-inflator-hose?variant=39824412292&currency=USD&utm_campaign=gs-2018-07-30&utm_source=google&utm_medium=smart_campaign&gclid=EAIaIQobChMIob648c6k5QIVlYbVCh25aA57EAYYASABEgKpFfD_BwE

Dive Bag @ $306.00 + 8% Tax + S&H
https://www.amazon.com/ScubaPro-Pack-Duo-Rolling-Dive/dp/B01AARPT08/ref=sr_1_5?dchild=1&keywords=scubapro+dive+bag&psc=1&qid=1571360320&sr=8-5

Plunger @ $18.32 + 8% Tax + S&H
https://www.walmart.com/ip/New-Drain-Buster-Plunger-two-heads-Clears-Tough-Clogs-Toilet-Sink-Drains-Sinks/199274547

Toilet Snake @ $62.35 + 8% Tax + S&H
https://www.amazon.com/RIDGID-59802-Toilet-Clogged-Toilets/dp/B0015BABE8/ref=sr_1_11?keywords=toilet+snake&qid=1571357584&sr=8-11

Buckets/Pails @ $27.99 Each + 8% Tax + S&H
INCREASE/MULTIPLY FOR TWO (2) TO $55.98 + 8% Tax + S&H for Toilet Snake and Plunger
https://www.amazon.com/Hudson-Exchange-Premium-Gallon-Bucket/dp/B07FMPF3Y8?ref_=ast_sto_dp

Small Buckets/Pails @ $23.38 Each + 8% Tax + S&H
INCREASE/MULTIPLY FOR ESTIMATE OF Twelve (12) TO $280.56 + 8% Tax + S&H
https://www.amazon.com/STERILITE-11254306-18QT-Spout-Pail/dp/B00ISKV03U/ref=sr_1_81?crid=1Q1YW2CBW0YNR&keywords=pails+and+buckets&qid=1571596300&refinements=p_89%3ARubbermaid%7CRubbermaid+Commercial+Products%7CRubberma%C3%ADd+Commercial+Products%7CSTERILITE%7CSTÉRILITE%7CSterilité&rnid=2528832011&sprefix=pails%2Caps%2C157&sr=8-81

Snow Melt @ $27.99 Each + 8% Tax + S&H
INCREASE/MULTIPLY FOR TWO (2) TO $55.98 + 8% Tax + S&H
https://www.walmart.com/ip/Road-Runner-Pet-Friendly-Ice-Melt-Jug/47641753

3D Blu-Ray Player @ $1,689.97 + 8% Tax + S&H
https://www.amazon.com/Panasonic-Blu-ray-playback-support-DMP-UB900-K/dp/B01GRLCM60/ref=sr_1_4?keywords=3d+blu-ray+player&qid=1571359066&sr=8-4

Samsung Pedestals @ $259.99 + 8% Tax + S&H
https://www.bestbuy.com/site/samsung-27-washer-dryer-laundry-pedestal-white/6172620.p?skuId=6172620

Space Heater @ $57.38 + 8% Tax + S&H
https://www.walmart.com/ip/bovado-usa-166648-ceramic-space-heater-personal-warming-fan-with-adjustable-thermostat-carrying-handle-safety-features-by-comfort-zone-black/139594504

Epson Workforce WF-2750 All-In-One Printer @ $136.06 + 8% Tax + S&H
https://www.walmart.com/ip/Inkjet-Mono-7-3-Multifunction-Printer-Print-4800-dpi-WF-2750-Epson-Color-ppm-Plain-PRINTER-Desktop-WorkForce-1200-x-Paper-Copier-Fax-Printer-Scanner-/133644612

Storage Totes – Damaged Lid and Damaged Side of different colors @ $27.98 Each + 8% Tax + S&H
INCREASE/MULTIPLY FOR TWO (2) TO $55.98 + 8% Tax + S&H
https://www.lowes.com/pd/Centrex-Rugged-Tote-50-Gallon-200-Quart-Gray-Tote-with-Standard-Snap-Lid/1000237841

DVDs – in End Table/Nightstand from Living Room
Band of Brothers @ $42.13 + 8% Tax + S&H
https://www.amazon.com/Band-Brothers-DVD-Box-Set/dp/B07DCGPT27/ref=sr_1_2?crid=7OADFXOCCJJI&keywords=band+of+brothers+dvd+box+set&qid=1571361499&sprefix=band+of+brothe%2Caps%2C172&sr=8-2

Escape From Alcatraz @ $29.01 + 8% Tax + S&H
https://www.walmart.com/ip/Escape-From-Alcatraz-DVD/23381852

The Shawshank Redemption @ $22.99 + 8% Tax + S&H
https://www.bestbuy.com/site/the-shawshank-redemption-special-edition-2-discs-dvd-1994/6813031.p?skuId=6813031


The following should be repaired, rather than new:
Oak (Amish) Bedroom Suite - Headboard & Footboard; 2-3 Drawer Nightstands; 6 Drawer Chest of Drawers; and 8 Drawer Dresser with Mirror – new @ $4,200.00 + Shopping/Travel + 8% Tax + Delivery

42" Diameter Oak (Amish) Dining Table with 6 Oak Chairs and 2-12" Oak Leaves – new @ $3,200.00 + Shopping/Travel + 8% Tax + Delivery

36" Diameter Oak (Amish) Pub Table with 2-24" High Oak Bar Stools – new @ $1,200.00 + Shopping/Travel + 8% Tax + Delivery

4 ft. x 6 ft. Oak (Amish) Bookcase – new @ $700.00 + Shopping/Travel + 8% Tax + Delivery

3-in-1 Television Console @ $700.00 + Shopping/Travel + 8% Tax + S&H/Delivery


According to Brian Griffin (attached e-mail) and for your own requirement of "100% unpacked"
- Unpacking Now: $2,421.73 (even though buying and moving in less than a year)
- Repacking Now: $2,421.73 (for buying and moving in less than a year)

Miscellaneous Damaged from Mishandling of Bins, Cartons, etc. and Paperwork @ $2,500.00.



## The
### Repair & Restoration Report

*Onsite Inspection*
*for Furniture*

**Claim:** ████304

**Insured:** **Jay Koester**
6150 Boulder Ridge Drive
Rockford MN, 55373
(563) 419-8335

**RENOVAR**

**Adjuster/
POC:** **Jonathan Ortiz**
(630) 961-4310
jortiz12@travelers.com

**Assignment:** ████

**Carrier:** **Travelers**

2821 Emerywood Parkway, Suite 100
Richmond, VA 23294
p. 877.884.9446 ~ f. 703.832.0528
www.Renovar.com

**Date:** 12/17/20

*Renovar formerly known as National Restorations*

**For question about repair:**
repair@renovar.com
877.884.9446 Option #6

V21-20200810

Exhibit F

 # Table of Contents

Summary Report .............................................................................................................3

Restoration Work Authorization.......................................................................................5

About Renovar ................................................................................................................7

Inspection Detail & Restoration Proposal ........................................................................9

Exhibit F



# Summary Report

**Claim:** ▇304                                                                 FEIN: 27-2535185

| Insured/Property | Carrier | Date: | Assignment : |
|---|---|---|---|
| Jay Koester<br>6150 Boulder Ridge Drive<br>Rockford MN, 55373 | Travelers | 12/17/20 | ▇▇▇ |

**Payment Terms:**

50% Deposit, Balance Upon Delivery

*All decisions regarding repairs should be based on the scopes provided in the attached* <u>*Inspection Detail and Restoration Proposal*</u>*. This is a summary of items and prices only.*

## Repairable Items

| WO# | Item# | Item Description | Opinion of<br>Value | Repair $ | Variance |
|---|---|---|---|---|---|
| 124955.2<br>*Original Scope* | 991 | Pickup & Delivery | | $780.00 | |
| 124955.2<br>*Original Scope* | 1 | Oak Kitchen Table | $4,000.00 | $1,035.00 | |
| 124955.2<br>*Original Scope* | 2 | Coffee Table | $800.00 | $390.00 | |
| 124955.2<br>*Original Scope* | 3 | Small Oak Table | $1,600.00 | $520.00 | |
| 124955.2<br>*Original Scope* | 4 | Bookcase | $800.00 | $520.00 | |
| 124955.2<br>*Original Scope* | 5 | Vanity | $1,500.00 | $780.00 | |
| 124955.2<br>*Original Scope* | 6 | End Table | $600.00 | $260.00 | |
| 124955.2<br>*Original Scope* | 7 | Custom Shelf | $1,200.00 | $260.00 | |
| | | **Claim Aggregate** | **$10,500.00** | **$4,545.00** | **56.71%** |

Summary Report, cont.



## Inspected But Not to be Repaired

*Renovar inspects all items requested on the assignment or pointed out by the insured. This section highlights any items we inspected but found that they are either not cost effective, not repairable, the insured does not want repairs, or there was no visible damage. Details about the items and photos can be found in this report titled, Inspection Detail & Restoration Proposal.*

| WO# | Item# | Item Description | Repairability | Opinion of Value | Repair $ |
|---|---|---|---|---|---|

304

Exhibit F

Filed in District Court
State of Minnesota
2/6/2024 11:19 AM



# Restoration Work Authorization

**Insured:**
Jay Koester
6150 Boulder Ridge Drive
Rockford MN, 55373
(563) 419-8335
jayrkoester@yahoo.com

**Claim:**
████304

**Carrier:**
Travelers

**Authorized Total:**
$4,545.00
*50% Deposit, Balance Upon Delivery*

**I hereby authorize Renovar to perform the proposed repairs to the damage related to my claim/project as described in the attached Inspection Detail and Restoration Proposal.**

I realize that if my insurance company issues a two-party check for the repairs, I will sign over said check for the cost of repairs to Renovar after completion of the original scope of work described on the final invoice. If additional work is required in the course of the repairs, we will agree on the scope and price as a supplement.  In the unlikely event that Renovar does not receive payment due to my actions, I realize that they may choose to proceed with full standard collection procedures as allowed by the state that I reside. In addition, I understand any person or entity that performs work at my property may file a mechanics' lien against my property that is recorded in the legal records for my jurisdiction, and provides the filer a security interest in the title to my property.  I agree that I am liable for Renovar's reasonable attorney's or collections fees arising out of any default by me of this agreement, including the collection of any outstanding amount owed by me to Renovar.  I appreciate that I will receive a five-year warranty for all the work performed by Renovar and will be provided a complete copy of said warranty upon satisfactory completion of Renovar's restoration work. In the event that I am not completely satisfied with the quality of the repairs, Renovar will correct the concerns under said warranty at no additional cost.  All warranty work must be performed by an approved Renovar repair firm and I agree to allow Renovar to correct any concerns with the scoped repair.

### Obligations

*Renovar's Obligations:*
- Provide labor, material to properly finish the job
- Schedule any necessary inspections, ensuring all repair work is completed in accordance with applicable codes
- Ensure work is completed as per agreed scope
- Ensure clean work area and remove all repair related debris after project completion

*Customer's/Property Owner's Obligations:*
- Ensure repair scope is approved on time
- Make arrangements to perform and pay for necessary work excluded from Renovar repair scope
- Issue payments per the specified payment schedule
- Pay for all necessary permits, assessments, and other charges required by public agencies
- Provide timely access to the work area

**I hereby acknowledge that I am the Property Owner or the Authorized Agent for the owner. By signing this document, I am authorizing that I want the repairs performed by Renovar and their affiliate firm and agree to the payment terms presented. I understand that I have 3-business days from the date signed to cancel this authorization, in writing, unless I request the work start prior to those 3-business days.  All balance payments for work performed are due upon delivery.**

_____
Print Name

Filed in District Court
State of Minnesota
2/6/2024 11:19 AM

About Renovar, cont.



_____

Signed                                          Date

### Direction to Pay

*In addition to authorization for the repairs*, I authorize and empower my insurance company to pay Renovar directly the total cost of repairs as outlined in this R3 report, subject to my policy terms and conditions. The specific work to be performed shall be pursuant to the scope specified herein and the final invoice submitted to my insurance company.

I recognize that I will be responsible for any deficit due to policy deductibles, policy limits, and/or direct payment from my insurance company to me, or parties representing me.

*Separate signature required in conjunction with the above work authorization for this direction to pay. This direction to pay is optional and left to the discretion of your insurance company.*

_____

Signed                                          **Assignment:** 124955

Exhibit F

About Renovar, cont.



# About Renovar

*Expert Settlement Data & Indemnity Control*

Simply stated, our mission is to help our insurance industry clients to close claims quickly and easily by providing independent and expert settlement data to assist the claim resolution process in a fair manner – while standing ready, willing and able to perform the actual repair and restoration work (assuming it is desired and authorized by the policyholder).

Renovar is a one-stop shop for every claim involving furniture or cabinets, eliminating the headaches of dealing with multiple restorations firms across the country.

Key aspects of the Renovar program and the R3™ Evaluation Report include:

1) **Restoration Assessment**
   Analysis of whether the damaged item(s) can be cost-effectively repaired and restored;

2) **Restoration Proposal**
   Detailed description of the exact methods, procedures and costs to perform the repair and restoration work backed by a firm, fixed price proposal to complete the restoration;

3) **Opinion of Replacement Value**
   Our opinion of replacement value is usually derived by either accepted estimating software (cabinets) or our expert's educated opinion (furniture). Renovar does not replace items as it poses a conflict of interest.

4) **Independent, Expert Settlement Data**
   Our team and our restoration network have hundreds of years of combined experience allowing us to render independent and expert settle data for our clients.

## Our Warranty

Our work carries a local 5-year workmanship warranty, plus the full backing of Renovar.

## Our Restoration Network

We provide our services through a network of craftsman throughout the United States. To become a member of our network they must qualify through a set of stringent credentials:

1.  All must have a full woodworking shop including finishing capabilities.
2.  All must have 5 year's experience in the industry, but our firms currently average 10+ years of experience.
3.  Each firm must meet requirements for insurance, financial strength and reputation.
4.  Annual background checks on all employees that enter the policyholder's property.

## Restoration Evaluation

Based on (1) a detailed review of photographs of the damaged items from various angles and (2) a description of the damage provided from the field, Renovar hereby provides its professional Restoration Evaluation ("RE") regarding whether the damaged item(s) can be restored to the pre-loss condition (or even better).

The Renovar RE is based solely on the damage description and photographs provided in conjunction with the assignment. Any damage that is not described in the information provided or not visible in the photographs provided is subject to additional analysis that may impact the RE and the Restoration Proposal herein. A supplemental addendum may be required to address any unseen damage.

## Repair Pricing Methodology

- True "repair" costs for furniture and cabinets are not part of the accepted estimating systems used by insurance companies.
- Labor rates vary across the country and are factored into


304


Exhibit F

About Renovar, cont.

RENOVAR R²

the proposal.

- Finishing is the most labor-intensive part of the restoration process.
- Renovar is restoring items to match existing as opposed to replacing things with like kind and quality materials.
- Our restoration evaluation methodology is part art, part science, all craftsmanship.

*Important Notes Regarding Furniture & Specialty Items*

Renovar does not provide a formal appraisal of value, but rather an opinion of the estimated replacement value based on our collective experience, market knowledge, judgment, and any original or replacement value suggested by the policyholder or adjuster.

To determine the opinion for furniture items, we will first ask the policyholder about the damaged item including the age of the piece, original purchase price and origins of the item.

Renovar will also conduct a visual inspection and analysis taking into account the overall construction, materials, manufacturer, finish and finishing techniques, wear and tear, any pre-existing conditions or damage. This analysis is performed based on either photos provided by the adjuster (or their representative) or by our on-site inspection requested by the adjuster.

If the policyholder provides an original or estimated replacement value, Renovar will take that into account and note the source of that estimated value on the Replacement Value Opinion. Based on our experience and expertise, there are times where we will challenge the estimated value provided by the policy, either low or high, while providing the Replacement Value Opinion in an independent and unbiased fashion. Any such concerns will be noted in the Replacement Value Opinion.

*Important Notes Regarding Cabinetry Replacement Value*

Cabinets are handled differently as the insurance industry generally relies on the estimating software for regional labor and material pricing based on the linear feet of cabinets involved. During the Renovar' inspection and analysis, measurements from the damaged cabinets are used to calculate an estimated replacement value from the estimating software. This analysis is performed based either on the photos and measurements provided by the adjuster (or their representative) or by our on-site inspection requested by the adjuster.

It is important to note that the estimating software pricing for cabinet replacement includes only the cost for the finished cabinet boxes, doors, and drawers as well as the labor to remove the old and install; it does not include any required plumbing, electrical, or anything to do with corollary damage reconstruction unless noted in the scope of work; this method conservatively calculates the Opinion of Replacement Value for cabinets.

304

Exhibit F

Filed in District Court
State of Minnesota
2/6/2024 11:19 AM



# Inspection Detail & Restoration Proposal

*Renovar stands ready and willing to perform the following restoration work. The following pages detail our inspection of damages, repair assessment, and proposed restoration scope for each item inspected.*

| Item#: | Item Description: | Value Opinion: | Repair Value: |
|---|---|---|---|
| 1 | Oak Kitchen Table | $4,000.00 | $1,035.00 |

124955.2
Original Scope

| Damage Description: | Source: | Repair: |
|---|---|---|
| Scratch on leaf, small holes in finish of table. | INS | Yes |

**Repair Scope:**
Refinish leaf and top of table to match.

**Photos:** Oak Kitchen Table

304

Exhibit F

Inspection Details & Restoration Proposal, cont.



**Photos:** Oak Kitchen Table



| Item#: | Item Description: | Value Opinion: | Repair Value: |
|---|---|---|---|
| 2 | Coffee Table | $800.00 | $390.00 |

62-CV-24-721

Filed in District Court
State of Minnesota
2/6/2024 11:19 AM

Inspection Details & Restoration Proposal, cont.



124955.2
Original Scope

**Damage Description:**
Small gouge in table top. Some scratches.

**Source:**
INS

**Repair:**
Yes

**Repair Scope:**
Refinish top and edge of table.

**Photos:** Coffee Table




| Item#: | Item Description: | Value Opinion: | Repair Value: |
|---|---|---|---|
| 3 | Small Oak Table | $1,600.00 | $520.00 |

124955.2
Original Scope

**Damage Description:**
Some kind of residue on table top from cleaning, Grain is filled which the customer does not like. Edge of table coloring does not match.

**Source:**
INS

**Repair:**
Yes

**Repair Scope:**
Refinish top and edge.

**Photos:** Small Oak Table

304

Exhibit F

Filed in District Court
State of Minnesota
2/6/2024 11:19 AM

Inspection Details & Restoration Proposal, cont.



**Photos:** Small Oak Table



| Item#: | Item Description: | Value Opinion: | Repair Value: |
|---|---|---|---|
| 4 | Bookcase | $800.00 | $520.00 |

STRICTLY CONFIDENTIAL



Exhibit F

Inspection Details & Restoration Proposal, cont.



124955.2
Original Scope

**Damage Description:**
Shelf on bookcase is gouged, side to bookcase is cracked.

**Source:**
INS

**Repair:**
Yes

**Repair Scope:**
Glue side of bookcase, refinish side and touchup shelf.

**Photos:** Bookcase






Inspection Details & Restoration Proposal, cont.

**Photos:** Bookcase



| Item#: | Item Description: | | Value Opinion: | Repair Value: |
|---|---|---|---|---|
| 5 | Vanity | | $1,500.00 | $780.00 |

| 124955.2 Original Scope | **Damage Description:** | **Source:** | **Repair:** |
|---|---|---|---|
| | Some kind of cleaning residue that filled the oak grain. Customer not happy with finish. Color match is to light, does not match rest of furniture. Top is also cracked. | INS | Yes |

**Repair Scope:**

Refinish to, match color closer to original. Reglue top to stop cracking.

**Photos:** Vanity

 

| Item#: | Item Description: | | Value Opinion: | Repair Value: |
|---|---|---|---|---|
| 6 | End Table | | $600.00 | $260.00 |

| 124955.2 Original Scope | **Damage Description:** | **Source:** | **Repair:** |
|---|---|---|---|
| | Top is cracked and customer not happy with color match to top and drawer. | INS | Yes |

**Repair Scope:**

Refinish top and match drawer better.

Exhibit F

Inspection Details & Restoration Proposal, cont.



---

**Photos:** End Table







Exhibit F

Inspection Details & Restoration Proposal, cont.



| Item#: | Item Description: | | Value Opinion: | Repair Value: |
|---|---|---|---|---|
| 7 | Custom Shelf | | $1,200.00 | $260.00 |
| 124955.2 Original Scope | **Damage Description:** | | **Source:** | **Repair:** |
| | Some discoloration on the top of the shelf. | | INS | Yes |
| | **Repair Scope:** | | | |
| | Refinish top. | | | |

**Photos:** Custom Shelf

 

| Item#: | Item Description: | | Value Opinion: | Repair Value: |
|---|---|---|---|---|
| 991 | Pickup & Delivery | | | $780.00 |
| 124955.2 Original Scope | | | **Source:** | |
| | **Damage Description:** | | | **Repair:** |
| | | | | Yes |
| | **Repair Scope:** | | | |
| | Would need to do pick up and delivery of furniture twice due to size of furniture needed to be moved. | | | |

**Photos:** Pickup & Delivery

Exhibit F

Filed in District Court
State of Minnesota
2/6/2024 11:19 AM

Inspection Details & Restoration Proposal, cont.



Exhibit F

The Travelers Home And Marine Insurance Company
P.O. Box 650293
Dallas, TX 75265-0293

12/18/2020

**Jay Koester**
**176 Cambridge Dr**
**West Des Moines IA 50266**

| | |
|---|---|
| **Insured:** | Jay Koester |
| **Claim Number:** | ███304 |
| **Policy Number:** | ████████-636-1 |
| **Date of Loss:** | 10/01/2019 |
| **Loss Location:** | Unk Maple Grove MN |

Dear Mr. Koester,

I am following up on our recent conversation about the damage to your property. As we discussed, I am providing a summary of your payment calculation and an explanation about the portion of your claim that is not covered under your policy.

## PAYMENT CALCULATION:

Please review the estimate provided. Should you have questions about any portion of the estimate, please contact me before beginning any repairs or replacing any items.

### Contents Damages:

| | |
|---|---|
| Full Cost of Repair or Replacement: | $1,848.21 |
| Minus Recoverable Depreciation: | - $0.00 |
| Minus Non-Recoverable Depreciation: | - $0.00 |
| Actual Cash Value: | $1,848.21 |
| Minus Deductible: | - $1,000.00 |
| Minus Prior Payment(s): | - $0.00 |
| Payment: | $848.21 |

## EXPLANATION OF NON-COVERED PORTION

As we discussed, after researching this claim, The Travelers Home And Marine Insurance Company determined that your policy does not cover your claim for damages to your furniture. The reasons for this determination are outlined below.

You presented a claim for the cost to replace your damaged furniture. Our research found that the damages you reported are not consistant with moving and appear to be age related wear and tear. Since your policy does not insure against age related wear and tear, your policy does not provide coverage.

As a reference, I have provided the following section of your policy, (HO-86 (12-08) Enhanced Home Package), which explains that this type of loss is not covered:

## SECTION I - PERILS INSURED AGAINST

P2286

Exhibit G

The Perils Insured Against under Coverages A and C are deleted and replaced by the following:

We insure against risk of direct physical loss to property described in Coverages A and C.

We do not insure, however, for loss:

A. Under Coverages A and C:
1. Excluded under Section I - Exclusions;

\*\*\*

e. Any of the following:
    (1) Wear and tear, marring, deterioration;
    (2) Mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

This decision is based on the information and documentation we received during our research of this claim. If you are aware of any new or different information or documentation that might lead us to reconsider our decision, please contact me immediately.

Your policy may have other terms, conditions and exclusions that apply to this claim. We do not waive any rights, including our right to deny coverage, for any other valid reason under the policy or at law.

Please review the Suit Against Us condition of your policy as it contains important information about the period of time in which you may bring legal action.

The state of Minnesota requires that our company advise you that, if your claim is a fire claim, you have the right to file with the Department of Commerce a complaint regarding the denial.  If you wish to take this matter up with the Minnesota Department of Commerce, it maintains a Consumer Protection & Education Division at 85 7th Place East, Suite 280, St. Paul, MN 55101; telephone number 651-539-1600.

If you have any questions, please contact me at (630)961-4310 or JORTIZ12@travelers.com.

Sincerely,


Jonathan Ortiz
Claim Professional
Direct: (630)961-4310
Office: (800)842-6172 Ext. 961-4310
Fax: (877)795-9975
Email: JORTIZ12@travelers.com

P2286

Exhibit G

Filed in District Court
State of Minnesota
2/6/2024 11:19 AM

TRAVELERS

✓ ≡ ACCEPTABLE

**JAY_KOESTER**

**Loss/Stolen Items**

| | QUANTITY | UNIT | TAX | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|
| CONTENTS | | | | | | | | | |
| 1. Plunger | 1.00 EA | 18.32 | 1.28 | 19.60 | 0/10 yrs | Avg. | 0% | (0.00) | 19.60 ✓ |
| 2. Toilet Bucket | 2.00 EA | 27.99 | 3.92 | 59.90 | 0/10 yrs | Avg. | 0% | (0.00) | 59.90 ✓ |
| 3. Toilet Snake | 1.00 EA | 40.00 | 2.80 | 42.80 | 0/10 yrs | Avg. | 0% | (0.00) | 42.80 |
| 4. Dry Suit | 1.00 EA | 140.00 | 9.80 | 149.80 | 0/10 yrs | Avg. | 0% | (0.00) | 149.80 |
| 5. Thermal liner | 1.00 EA | 33.00 | 2.31 | 35.31 | 0/3 yrs | Avg. | 0% | (0.00) | 35.31 |
| 6. Charcoal | 1.00 EA | 125.00 | 8.75 | 133.75 | 0/12 yrs | Avg. | 0% | (0.00) | 133.75 ✓ |
| 7. Scuba Fin | 2.00 EA | 60.00 | 8.40 | 128.40 | 0/10 yrs | Avg. | 0% | (0.00) | 128.40 |
| 8. Hose | 4.00 EA | 32.00 | 8.96 | 136.96 | 0/10 yrs | Avg. | 0% | (0.00) | 136.96 |
| 9. Snow Melt | 2.00 EA | 70.00 | 9.80 | 149.80 | 0/10 yrs | Avg. | 0% | (0.00) | 149.80 ✓ |
| 10. Space Heater | 1.00 EA | 155.00 | 10.85 | 165.85 | 0/10 yrs | Avg. | 0% | (0.00) | 165.85 ✓ |
| 11. Band of Brother DVD | 1.00 EA | 10.00 | 0.70 | 10.70 | 0/8 yrs | Avg. | 0% | (0.00) | 10.70 |
| 12. Escape from Alcatraz | 1.00 EA | 10.00 | 0.70 | 10.70 | 0/8 yrs | Avg. | 0% | (0.00) | 10.70 |
| 13. The Shawshank Redemption | 1.00 EA | 10.00 | 0.70 | 10.70 | 0/8 yrs | Avg. | 0% | (0.00) | 10.70 |
| 14. Printer | 1.00 EA | 459.00 | 32.13 | 491.13 | 0/4.5 yrs | Avg. | 0% | (0.00) | 491.13 ✓ |
| 15. Blu-ray player | 1.00 EA | 110.00 | 7.70 | 117.70 | 0/10 yrs | Avg. | 0% | (0.00) | 117.70 |
| **Totals: Loss/Stolen Items** | | | **108.80** | **1,663.10** | | | | **0.00** | **1,663.10** |

Handwritten annotations: item 3: "$62.35 + TAX + S&H"; item 4: "$3299.95 + TAX + S&H"; item 5: "$399.95 + TAX + S&H"; item 7: "$306.73 + TAX + S&H"; item 8: "DRY SUIT INFLATOR Hoses" "$420.00 + TAX + S&H"; item 11: "COLLECTORS TIN $42.3 + TAX + S&H"; item 12: "$29.01 + TAX + S&H"; item 13: "$22.89 + TAX + S&H"; item 15: "$1689.97 + TAX + S&H"

COLLECTIBLES

**Figurines**

| | QUANTITY | UNIT | TAX | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|
| CONTENTS | | | | | | | | | |
| 16. Mickey & Goofy Salt and Pepper Shaker Set | 1.00 EA | 42.00 | 2.94 | 44.94 | 0/1 yrs | Avg. | 0% | (0.00) | 44.94 |

Handwritten annotation: item 16: "$100.00 + TAX + S&H"

**TRAVELERS**

**CONTINUED - Figurines**

| | QUANTITY | UNIT | TAX | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|
| 17. | Goofie Figurine Tipping Hat | | | | | | | | |
| | 1.00 EA | 42.00 | 2.94 | 44.94 | 0/1 yrs | Avg. | 0% | (0.00) | 44.94 |
| 18. | Goofy Olympic Champ Stained Glass Lamp | | | | | | | | |
| | 1.00 EA | 89.00 | 6.23 | 95.23 | 0/10 yrs | Avg. | 0% | (0.00) | 95.23 |
| **Totals: Figurines** | | | 12.11 | 185.11 | | | | 0.00 | 185.11 |
| **Line Item Totals: JAY_KOESTER** | | | 120.91 | 1,848.21 | | | | 0.00 | 1,848.21 |

*(handwritten annotations:)*
- Item 17: $100⁰⁰ + TAX + S&H
- Item 18: $1,000⁰⁰ + TAX + S&H -

[%] - Indicates that depreciate by percent was used for this item
[M] - Indicates that the depreciation percentage was limited by the maximum allowable depreciation for this item

*(handwritten:)*

MISSING:
TV CONSOLE @ $700⁰⁰ + TAX + S&H + SHOPPING/TRAVEL
DIVE BAG FOR DRY SUIT @ $306⁰⁰ + TAX + S&H + DELIVERY

UNITED - UNPAID:
DIVE BAG @ $306.00 + TAX + S&H
STORAGE TOTES @ $55.98 + TAX + S&H
CLOTHES WASHER PEDESTAL @ $259.99 + TAX + S&H
DRYER PEDESTAL @ $259.99 + TAX + S&H
UNSATISFACTORY FURNITURE
$4,200 + SHOPPING/TRAVEL
$3,200 + TAX + S&H/DELIVERY
$1,200
$700

12/18/2020        Page: 4

Exhibit H