**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Jay Koester, | Case No. 24-cv-639 (SRN/TNL) |
| Plaintiff, | |
| v. | **ORDER** |
| Jonathan Ortiz and Robin Ragusa, | |
| *d/b/a* Travelers, | |
| Defendants. | |

Jay Koester, 6150 Boulder Ridge Drive, Rockford, MN 55373, Pro Se.

Leatha G. Wolter and Thomas Joseph Joyce, Meagher & Geer, PLLP, 33 South Sixth Street, Suite 4400, Minneapolis, MN 55402, for Defendants.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Defendants' Motion to Substitute Parties under Federal Rule of Civil Procedure 21 and Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) [Doc. No. 4]. Based on a review of the files, submissions, and proceedings herein, and for the reasons stated below, the Court grants both Defendants' motions.

1

## I.    BACKGROUND

### A.    Factual Allegations

#### 1.    The Travelers Policy

Mr. Koester obtained a one-year homeowner's condominium insurance policy ("the Policy") from Travelers Home and Marine Insurance Company ("Travelers") on February 8, 2018. (Policy [Doc. No. 8] at 1.)[1] He then renewed the Policy for an additional year, until February 8, 2020. (*Id*. at 50.) He was living in Iowa at the time he obtained and renewed the Policy. (Compl. at 1 ¶ 2; Policy at 12, 50.)

Section I of the Policy details its coverage for damage to policy holders' property, including personal property, along with certain exclusions from that coverage. (Policy at 18–20.) Further, it provides that no action can be brought against Travelers unless the action "is started within two years after the date of loss." (*Id*. at 30.)

#### 2.    Mr. Koester's Claim for Loss under the Policy

In the fall of 2019, Mr. Koester moved from West Des Moines, Iowa, to Maple Grove, Minnesota. (Compl. at 1 ¶ 2.) He hired a moving company to transport his personal property from his former residence to a townhouse he rented in Maple Grove. (*Id*. at 1 ¶¶ 2–4.) During the moving process, some of his personal property was damaged, and other items did not arrive at all. (*Id*. at 1 ¶ 2.) The moving company contracted with a third party to repair the damaged items, and Mr. Koester alleges that those attempted repairs resulted

---

[1]    Where, as here, the claims relate to a written contract that is a part of the record in the case, the contract is necessarily embraced by the pleadings and the Court "considers the language of the contract when reviewing the sufficiency of the complaint." *Neubauer v. FedEx Corp.*, 849 F.3d 400, 405 (8th Cir. 2017).

in further damage to his property. (*Id*. at 1 ¶ 4.) Ultimately, Mr. Koester and the moving

company resolved their dispute by way of a settlement in federal court. (*Id*. at 2 ¶ 5.)

After Mr. Koester settled with the moving company, he submitted the remainder of

his claim to Travelers on September 2, 2020. (*Id*. at 3 ¶ 5.) Travelers assigned his claim a

date of loss of October 1, 2019. (Compl. Ex. G; *also* Compl. at 10 ¶ 4.)[2]

On September 14, 2020, his claim was assigned to Mr. Jonathan Ortiz. (Compl. at

3 ¶ 6.) Mr. Ortiz first reached out to Mr. Koester by email on October 15, 2020. (*Id*. at 3

¶ 7.) On November 11, 2020, Mr. Ortiz notified Mr. Koester that "a restoration company

will be in contact with you to schedule an onsite inspection of the damaged items." (*Id*.)

On November 30, 2020, Mr. Kyle Dretsch, a lead investigator for Travelers in St.

Paul, Minnesota, contacted Mr. Koester to schedule an inspection. (*Id*. at 3 ¶ 9.) Due to

some initial scheduling difficulties, Mr. Dretsch's colleague Shawn Neugebauer met with

Mr. Koester on December 8, 2020. (*Id*. at 3–4 ¶¶ 10–11.)

On December 17, 2020, Mr. Ortiz received the inspection report and discussed it

with Mr. Koester. (*Id*. at 4 ¶ 12.) The following day, he provided Mr. Koester a written

summary of Travelers' investigation. (Compl. Ex. G.) For the covered portion of the claim,

Travelers estimated that the full cost of repair or replacement was $1,848.21. (*Id*.) After

reducing the estimate to reflect Mr. Koester's $1,000 deductible, Travelers estimated that

---

[2]     Exhibits B through H attached to the Notice of Removal [Doc. No. 1] consist of
documents that Mr. Koester filed in this matter in state court in addition to the summons
and complaint. The Court construes these filings as exhibits to the complaint, which "may
be considered in construing the sufficiency of the complaint," and cites them as such.
*Meehan v. United Consumers Club Franchising Corp.*, 312 F.3d 909, 913 (8th Cir. 2002)
(quoting *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986)).

he was entitled to $848.21. (*Id*.) Mr. Ortiz advised Mr. Koester that Travelers had determined that the Policy did not cover his claim for damages to his furniture. (*Id*.) Specifically, Travelers concluded that the reported damages were not consistent with damage from moving and appeared instead to be "age related wear and tear," which was not covered by the Policy. (*Id*.) In the same communication, Mr. Ortiz also advised Mr. Koester to "review the Suit Against Us condition of your policy as it contains important information about the period of time in which you may bring legal action." (*Id*.)

On December 27, 2020, Mr. Ortiz emailed Mr. Koester again, and invited him to reach out with any outstanding questions or concerns. (Compl. at 4 ¶ 13.) In response, Mr. Koester attempted to contact Mr. Ortiz, but never heard from him. (*Id*.) On January 20, 2021, Mr. Stephen Sherwood, a claims manager for Travelers, took over communications with Mr. Koester. (*Id*. at 4 ¶ 14.) He asked Mr. Koester to verify the ages of various pieces of personal property, and requested that he upload additional documents to his claim. (*Id*. at 4 ¶ 15.) On April 29, 2021, he emailed Mr. Koester stating that he would review the additional materials and determine whether any revisions were needed to Travelers' estimate. (*Id*. at 4 ¶ 17.) Mr. Koester alleges that he did not receive any follow-up from Mr. Sherwood, despite emailing him again on December 31, 2021. (*Id*. at 4 ¶ 18.)

On April 12, 2022, Mr. Koester again contacted Travelers about his loss. (*Id*. at 4 ¶ 19.) The claim was reassigned to Ms. Robin Ragusa, who responded to him on April 22, 2022. (*Id*. at 5 ¶¶ 20–21.) On June 1, 2022, he sent Ms. Ragusa a third-party repair report that he had uploaded to his file. (*Id*. at 5 ¶ 22.) Ms. Ragusa and Mr. Koester emailed back and forth about the claim throughout the summer and fall of 2022. (*Id*. at 5–6 ¶¶ 24–30;

Compl. Ex. C.) They continued to communicate about issues related to payment throughout 2023, and on August 13, 2023, Mr. Koester emailed Ms. Ragusa a copy of the same report he had uploaded before. (*Id*. at 6 ¶ 36.) Ms. Ragusa did not respond to this email. (*Id*.)

### B.    Procedural History

Mr. Koester commenced this lawsuit, pro se, in Ramsey County District Court on February 6, 2024. (Summons [Doc. No. 1]; Compl.) He asserts four counts against both Mr. Ortiz and Ms. Ragusa, *d/b/a* Travelers. Count 1 asserts an action to determine an adverse claim to real property pursuant to Minnesota Statute § 559.01, and Count 2 seeks a declaratory judgment nullifying the claim determination under the same statute. (Compl. at 7–8.) Count 3 asserts a claim for defamation, alleging that Mr. Ortiz and Ms. Ragusa made false statements and implied that Mr. Koester is a "liar and attempting insurance fraud," and that the false statements have caused Travelers to deny coverage for his requested repairs. (*Id*. at 8–9.) Count 4 asserts a claim for the intentional infliction of emotional distress, based on Mr. Ortiz and Ms. Ragusa's alleged conduct and communications with him. (*Id*. at 9–10.)

On February 29, 2024, the Defendants timely removed this action to federal court. (Notice of Removal [Doc. No. 1].) On March 7, 2024, the Defendants made a motion to substitute parties and a motion to dismiss the complaint [Doc. No. 4]. On March 15, 2024, Mr. Koester emailed the Court, copying Defendants' counsel, and attached a Response and Affidavit. He did not file his brief with the Court. On March 31, 2024, he emailed the Court and defense counsel objecting to the removal of this action to federal court.

## II.   DISCUSSION

### A.   Motion to Substitute Parties

Federal Rule of Civil Procedure 21 provides that:

Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party.

This Court has wide discretion to grant a motion under Rule 21 if it deems it just to do so and determines that doing so would not cause "substantial prejudice" to any party. *Strandlund v. Hawley*, 532 F.3d 741, 745–46 (8th Cir. 2008).

The Defendants ask the Court to substitute Travelers as the proper defendant in this lawsuit. They argue that Mr. Koester successfully served the summons and complaint on Travelers, but failed to properly serve either Mr. Ortiz or Ms. Ragusa. They note that the only conduct alleged against either Defendant in the complaint occurred within the scope of their employment with Travelers. (Ortiz Decl. [Doc. No. 9]; Ragusa Decl. [Doc. No. 10].)

The Court must determine whether substituting Travelers in this matter would substantially prejudice any party. In light of the fact that the only conduct alleged against Mr. Ortiz and Ms. Ragusa occurred in the course of their employment with Travelers, and the relief sought in the complaint is solely against Travelers, the Court finds that Travelers is the only proper defendant in this case. No prejudice will result to any party by granting this motion.

Further, although Mr. Koester served Travelers, he has not effectively served either Mr. Ortiz or Ms. Ragusa, neither of them have waived service, and more than 90 days have

passed since the Defendants removed this action to federal court. In light of the fact that

the Court finds that the facts alleged in the complaint cannot support a claim for relief, any

additional delay for proper service would not contribute to a just, speedy, and inexpensive

resolution of the matter. The Court therefore grants the Rule 21 motion, and substitutes

Travelers as the proper defendant in this case.[3]

### B.      Motion to Dismiss for Failure to State a Claim

#### 1.      The Law

When considering a motion to dismiss for failure to state a claim under Rule

12(b)(6), the Court accepts the facts alleged in the complaint as true and views those

allegations in the light most favorable to the plaintiff. *See Dormani v. Target Corp.*, 970

F.3d 910, 914 (8th Cir. 2020). However, the Court need not accept a plaintiff's conclusory

statements or legal conclusions. *Retro Television Network, Inc. v. Luken Communications,*

*LLC*, 696 F.3d 766, 768–69 (8th Cir. 2012). The Court ordinarily does not consider matters

outside of the pleadings on a Rule 12(b)(6) motion, but it may consider exhibits attached

to the complaint along with materials that are necessarily embraced by the pleadings.

*Buckley v. Hennepin County*, 9 F.4th 757, 760 (8th Cir. 2021).

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

---

[3]      For consistency, the Court continues to refer to "the Defendants" throughout the
remainder of this Order.

(2007)). The facts alleged must have enough specificity "to raise a right to relief above the speculative level." *Bell Atl. Corp.*, 550 U.S. at 555.

### 2. Claims under the Policy

Counts 1 and 2 of the Complaint request relief pursuant to Minnesota Statute § 559.01 ("Action to Determine Adverse Claims"). Minn. Stat. § 559.01 is a mechanism for determining the rights of parties with adverse claims to real property. On its face, the statute does not provide any relief for a dispute over the extent of an insurance policy's coverage. "Any person in possession . . . or claiming title to . . . real property, may bring an action against another who claims an estate or interest therein, or lien thereon . . ." *Id.* Mr. Koester has not alleged that the Defendants claim any estate, interest, or lien with respect to his real property, and accordingly he fails to state a claim under § 559.01. That said, both Count 1 and Count 2 seek relief related to Travelers' claim determination. The Court therefore construes these counts, instead, as contractual claims asserted under the Policy, and proceeds to analyze them as such. *See Smith v. Andrews*, 75 F.4th 805, 808 (8th Cir. 2023) (pro se filings, "however inartfully pleaded," must be construed liberally).

Assuming the claims are contractual in nature, the Defendants argue that the two-year limitations period set forth in Section I of the Policy is fatal to this action. To evaluate this defense, the Court first determines whether the Policy's limitations period is valid and enforceable as a matter of law.

A district court sitting in diversity jurisdiction applies state substantive law to the interpretation of insurance policies. *Rossi*, 60 F.4th at 1194. If more than one state's laws may apply, the Court must consider the conflict of law rules of the forum state to determine

8

which state's law controls. Under Minnesota law, before engaging in any choice-of-law analysis, a court must first determine whether an outcome determinative conflict exists between the potential state laws to be applied. *Sigler v. Ecolab, Inc.*, 625 F. Supp. 3d 789, 796 (D. Minn. 2022) (Nelson, J.) (citing *Nodak Mut. Ins. Co. v. Am. Family Mut. Ins. Co.*, 604 N.W.2d 91, 94 (Minn. 2000)).

Although Minnesota is the state in which Mr. Koester initiated his lawsuit and his current state of residence, Iowa is the state in which he resided when he originally obtained the Policy. The Court need not determine whether Minnesota or Iowa law controls the interpretation of the Policy in this case, however, because it finds that the two-year limitations period would be enforceable under the laws of either state.

Minnesota law provides for a six-year statute of limitations for claims based on insurance policies "as to which no other limitation is expressly prescribed." Minn. Stat. § 541.05, subd. 1(1). That six-year statute of limitations does not prevent parties from contracting for a shorter limitations period, and when a policy expressly prescribes a shorter limitation period, that period must be enforced unless it is unreasonably short. *Varela v. State Farm Mut. Auto. Ins. Co.*, 655 F. Supp. 3d 813, 822 (D. Minn. 2023) (quoting *Henning Nelson Const. Co. v. Fireman's Fund Am. Life Ins. Co.*, 383 N.W.2d 645, 650 (Minn. 1986)). Whether a policy's limitation period is reasonable or not must be decided by the Court on a case-by-case basis, looking at the particular facts of each case. *Henning*, 383 N.W.2d at 650.

In this case, the date of Mr. Koester's loss was assigned as October 1, 2019. As alleged in his complaint, within two years of that date, he had engaged in and settled

litigation with his moving company over the same loss. (Compl. at 2 ¶ 5.) He had also received an estimate and full determination of his claim from Travelers, contested it, and submitted additional documentation. (*Id.* at 4 ¶¶ 12, 17.) On December 18, 2020, he received a communication from Mr. Ortiz explaining Travelers' determination of his claim and directing him to the Policy's limitation period. (Compl. Ex. G.) On these facts, the Court finds that the two-year limitation period is reasonable and therefore would be enforced under Minnesota law.

The limitation period would be similarly enforceable in Iowa. Iowa's Code provides that claims based on insurance policies must be brought within ten years, "except when otherwise specially declared," and does not prohibit parties to an insurance contract from further limiting the deadline for bringing suit. Iowa Code § 614.1. Iowa courts enforce such a contractual limitation "if it is reasonable," and have consistently held that an insurer may reasonably limit the limitations period to two years following the date of the loss. *Osmic v. Nationwide Agribusiness Ins. Co.*, 841 N.W.2d 853, 858–59 (Iowa 2014); *see Robinson v. Allied Property & Cas. Ins. Co.*, 816 N.W.2d 398, 402 (Iowa 2012) (citing cases). For the same reasons as discussed above, the Court finds that the two-year limitation period in this case is reasonable and therefore would be enforced under Iowa law.

Having determined that the Policy's two-year limitation period is valid and enforceable as a matter of law, the Court now considers its effect on this case. The Defendants assert that Mr. Koester has failed to state a claim related to his loss, because this lawsuit was commenced after the Policy's limitation period lapsed. "When it appears from the face of the complaint itself that the limitation period has run, a limitations defense

may properly be asserted through a Rule 12(b)(6) motion to dismiss." *Smithrud v. City of St. Paul*, 746 F.3d 391, 396 n.3 (8th Cir. 2014) (quoting *Varner v. Peterson Farms*, 371 F.3d 1011, 1016 (8th Cir. 2004)).

Here, the Policy unambiguously states that the two-year limitation period begins on the date of the original loss. The loss occurred on October 1, 2019. Mr. Koester filed his complaint in Ramsey County District Court on February 6, 2024, well after the two-year limitation period had lapsed. It is thus apparent from the face of the complaint that Mr. Koester has failed to state a claim under Counts 1 and 2 because the claim is time-barred.

### 3. Tort Claims: Count 3 (Defamation) and Count 4 (Intentional Infliction of Emotional Distress)

#### a. Defamation

The Court finds that there is no outcome-determinative conflict between Minnesota and Iowa law regarding the elements a plaintiff must plausibly allege to adequately plead a claim for defamation. In each state, a plaintiff must plausibly allege the following: (1) a false and defamatory statement about the plaintiff made by the defendant; (2) an unprivileged communication of that false statement by the defendant to a third party; and (3) a showing that the false statement harmed plaintiff's reputation within the community. *See Maethner v. Someplace Safe, Inc.*, 929 N.W.2d 868, 873 (Minn. 2019); *Tholen v. Assist America, Inc.*, 970 F.3d 979, 983 (8th Cir. 2020); *Bierman v. Weier*, 826 N.W.2d 436, 443–44 (Iowa 2013). Emotional harms, standing alone, are insufficient to demonstrate the reputational harms required to adequately plead a claim for defamation. *Maethner*, 929 N.W.2d at 874–75; *Bierman*, 826 N.W.2d at 462.

11

Mr. Koester alleges that Mr. Ortiz, Ms. Ragusa, and Travelers made false statements about him, which resulted in the denial of repairs to his property. Accepting these allegations as true, the Court finds that he has not plausibly alleged a claim for defamation under either Minnesota or Iowa law because he does not allege any reputational harm. The only harms from the alleged defamation as stated in the complaint are those resulting from his "being forced to live with at least damaged [property] for many years." (Compl. at 9 ¶ 4.) Because he fails to plead any harm to his reputation in the community, his claim for defamation fails as a matter of law.

### b.    Intentional Infliction of Emotional Distress

The Court finds there is no conflict between the laws of Minnesota and Iowa as to the required elements for a claim for intentional infliction of emotional distress. To state a claim for intentional infliction of emotional distress under the laws of either state, a plaintiff must plausibly allege each of the following elements: (1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) the conduct must cause emotional distress; and (4) the distress must be severe. *See White v. Harkrider*, 990 N.W.2d 647, 652 (Iowa 2023); *Langeslag v. KYMN, Inc.*, 664 N.W.2d 860, 854 (Minn. 2003).

> Conduct is "extreme and outrageous" when it is so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community. Liability for intentional infliction of emotional distress does not extend to insults, indignities, threats, annoyances, petty oppressions, or other trivialities. To qualify as extreme and outrageous, the conduct must lead an average member of the community to exclaim "Outrageous!"

*Langeslag*, 664 N.W.2d at 854 (internal citations omitted); *also White*, 990 N.W.2d at 653 (to meet the standard, conduct must be "so extreme in degree, as to go beyond all possible

12

bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society"). "Plaintiffs face a heavy burden to establish mental distress severe enough to prevail on an [intentional infliction of emotional distress] claim: the law intervenes only when the distress inflicted is so severe that no reasonable person could be expected to endure it." *Rovere v. Ling*, No. A23-192, 2024 WL 74945, at \*7 (Minn. Ct. App. Jan. 8, 2024); *also Smith v. Iowa State Univ. of Sci. & Tech.*, 851 N.W.2d 1, 30 (Iowa 2014) (same).

Although Mr. Koester did plead that the Defendants' conduct was "extreme and outrageous" and that "no reasonable person could be expected to endure" it (Compl. at 9–10 ¶¶ 1, 5), "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp.*, 550 U.S. at 545. The conduct alleged does not rise to the level of extreme and outrageous conduct required by either Minnesota or Iowa law. Mr. Koester fails to plausibly state a claim for intentional infliction of emotional distress as a matter of law.

## III.   ORDER

Based on the submissions and the entire file and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

A.   The Defendants' Rule 21 Motion to Substitute Parties and Rule 12(b)(6) Motion to Dismiss [Doc. No. 4] are **GRANTED.**

B.   Travelers Home and Marine Insurance Company is substituted as the Defendant in this action.

C.   The case is **DISMISSED with prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: July 24, 2024                                  /s/ Susan Richard Nelson
                                                      SUSAN RICHARD NELSON
                                                      United States District Judge

14